THE STATE ex inf. JAMES C. DORIAN, Prosecuting Attorney of Knox County, ex rel. JOHN H. BLACK, Appellant, v. W. S. TAYLOR et al.

Division One, December 24, 1907.

1. **QUO WARRANTO: Prosecuting Attorney: Misleading Relator.** Where an information in the nature of a *quo warranto* was filed without the signature of the prosecuting attorney, which he had refused to sign, but which, in the belief of both himself and of relator and his counsel that he had no discretion in the matter, he consented they might file, neither relator nor his counsel can be said to have been misled by the prosecuting attorney, and if respondents by their answer plead that the information was not properly authenticated or authorized by him, relator and his counsel cannot object, because if he fell into an error it was one of their own contriving.

2. ————: ————: **Discretion: Signing Information.** The prosecuting attorney is vested with a high and discriminating discretion in the matter of instituting an inquiry in the nature of a *quo warranto* at the relation of a private citizen, and that discretion must be exercised before it can be said that any such proceeding has been legally instituted. He cannot delegate that discretion or power to any other person, by consenting, for instance, that an information in his name, without his signature, may be filed. But the affirmative exercise of his discretion is to be evidenced by his signature to an information in due form and its exhibition in court. No private person has the right to use his name for the purpose of suing out the writ in *quo warranto* or of bringing the information.

3. ————: ————: **Non-Action.** Where the filing of an information in *quo warranto* at the relation of a private person, without his signature, was the result of mere non-action on his part and in no sense the exercise of his official discretion, it cannot be entertained, and process issued in pursuit thereof is improvident. And that is the rule, whether the proceeding be considered quasi-criminal or civil. [Distinguishing State ex rel. v. Campbell, 129 Mo. 396.]

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*O. D. Jones, George A. Mahan* and *W. N. Doyle* for appellant.

*L. F. Cottey* for respondents.

The information shows on its face that it is not signed by the prosecuting attorney, nor by any person for him. The record shows that leave to file the information was asked and obtained by the attorneys for the relator. The prosecuting attorney is on record saying that he will not lend the use of his name for the further prosecution of this suit. Can the appeal be perfected and the suit prosecuted in this court over the protest of the prosecuting attorney? Has this court acquired jurisdiction of the cause? These questions are answered in the negative by State ex inf. v. Talty, 166 Mo. 529.

LAMM, J.—Relator Black, by counsel, exhibited to the circuit court of Knox county, on the 5th day of June, 1905, an information in the nature of *quo warranto* against Taylor and five others, directors of the school district of the town of Hurdland in said county. Thereat leave was granted, and, summons issuing and service being had, respondents answered, and in July of that year (at a trial to the court without a jury) judgment went for defendants. From that judgment relator appeals.

The information follows:

"The State of Missouri, by James C. Dorian, the prosecuting attorney of Knox county, at the relation of John H. Black, gives the court to understand and be informed: That W. S. Taylor, A. S. Davis, G. H. Cockrum, James L. Gardiner, D. S. Durall and S. C. Sur-

rey, defendants herein, all of the county and State aforesaid, without any legal authority and right whatsoever have, they and their predecessors for the space of nearly three years, and since the 8th day of April, A. D. 1902, usurped, held and exercised the office of school directors or members of the board of education of the school district of the town of Hurdland, Knox county, Missouri, when in. fact and in law there were no such offices in said county of Knox, and still do so usurp, hold, use and claim to exercise the same within this State; and since that day aforesaid have unlawfully claimed and enjoyed and. used the power in law belonging and appertaining to such offices.

"That as such they are calling elections of said school district of the town of Hurdland, submitting a proposition to vote and have submitted such a proposition to vote an issue of $5,700 in bonds of said district, and now threaten to issue and sell the same to build and furnish a school house therein; and have caused such an election to be held, and as such school directors of said school district of the town of Hurdland are now threatening to issue bonds of said district illegally and sell the same without any authority in law, to the extent of $5,700.

"That the relator herein owns real estate and personal property in said district subject to taxation and is interested in the legal and orderly conduct of the affairs of said school district, and sues herein in his own behalf and in behalf of about forty other resident taxpaying citizens and legal voters of said district. He asks that the defendants be notified and required to answer herein and to show by what authority in law they claim and pretend to hold and exercise the powers and duties of the offices aforesaid and use its functions and powers as aforesaid, and that failing that they be ousted from such claimed offices, and that it be ascertained, adjudged and declared that no such.

offices exist, and for all legal and proper orders and judgments and costs of suit.

> "State of Missouri, at the   information   of
> James .C. Dorian, Prosecuting Attorney
> of Knox County, at the relation of John
> H. Black.
>
> > "By W. N. Doyle and O. D. Jones,
> >
> > > "Attorneys."

An aggregation of errors is asigned by relator's counsel and discussed in their brief; but defendants make a contention lying at the gateway of the case, and, therefore, challenging attention at the outstart; for if they are right in that contention, the gateway will not be passed and errors beyond are afield.

For the purpose of considering this preliminary question, so much of the answer as raises other issues may be put away.   The answer, after pleading other defenses, concludes as follows:

"These defendants, for other and further answer, and plea to the jurisdiction of the court, with respect to both the subject-matter of the suit and to the person of the defendant, say:   That plaintiff ought not to have or maintain this suit against these defendants, because it appears on the face of said information that it was not signed by James C. Dorian, prosecuting attorney of Knox county, Missouri; and because, in truth and in fact, the said information, or pretended information in the nature of a *quo warranto,* was never signed and filed by the said James C. Dorian, as prosecuting attorney of Knox county, Missouri, and is not his information and complaint against these defendants; because prior to the time of the filing of the said information, or pretended information, the said James C. Dorian was requested by the relator herein to sign said information in his official capacity as prosecuting attorney of Knox county, Missouri, which he refused to do; and thereupon, said information, or pretended

information, was filed in this court without the official signature of the said James C. Dorian, prosecuting attorney of Knox county, Missouri, and without the legal signature of anyone having legal authority so to do and sign the same.

"Defendants further state that under the Constitution and the laws of the State of Missouri, the prosecuting attorney is vested with an official discretion in determining whether or not he will file a *quo warranto* proceeding against any person for usurping a public office; and that James C. Dorian, prosecuting attorney of Knox county, Missouri, did exercise his discretion in this matter by refusing to sign said information or pretended information, and by refusing to institute said *quo warranto* proceedings to oust these defendants as directors of the school district of the town of Hurdland, in Knox county, Missouri.

"Defendants further answering say that they are informed and believe the facts to be, not only that the said James C. Dorian, as prosecuting attorney of Knox county, Missouri, refused to sign and file said information as aforesaid, but that he is not now willing to prosecute the same as such prosecuting attorney of Knox county, Missouri.

"Defendants aver that a wrongful and improper use of the process of this court has been used at the instance and procurement of plaintiff, to compel these defendants to appear and defend this suit at great cost, expense and inconvenience, and that such action is wholly ineffective to give this court jurisdiction over said matters in this proceeding or over these defendants, for the reasons aforesaid.

"Wherefore, defendants pray that this suit may be abated. And now, defendants having fully answered, ask to be discharged."

The foregoing averments of the answer were put

in issue by a general denial in the second clause of the
replication.

A finding of facts and conclusions of law were re-
quested, and among other conclusions of law the follow-
ing one, directed to the issue above outlined, was filed
by the court, to-wit:

"Under the evidence and pleadings in the case
the court declares the law to be that this court has no
jurisdiction of this cause, and the finding and judg-
ment should be for defendants."

The foregoing was challenged as error in the mo-
tion for a new trial, and error is assigned here on that
ground.

Having entered judgment on other features of the
case in favor of defendants, the judgment concludes as
follows:  "It is further adjudged and decreed that this
court has no jurisdiction of this case, and that the
information be dismissed, and that defendants have
judgment for their costs in this behalf laid out and
expended, and thereof execution is awarded."

The evidence anent the  foregoing  preliminary
question tends to establish the following facts and de-
velop the following condition:    Relator, a taxpayer
in the Hurdland school district,    employed    counsel
learned in the law to test the right of that district to
exist as a body corporate—to issue bonds for building
purposes and run the village school.    Thereupon they
planned to exhibit an information in the nature of
quo warranto, having for its object to disorganize, and
end the corporate life of, the Hurdland school district.
Nursing such intent, as they understood the law, they
needed to borrow the "use of the name" of the prose-
cuting attorney of Knox county, James C. Dorian. Ac-
cordingly, that official was asked to come to the office
of Mr. Jones, one of relator's counsel.    When once
there, the ball was set rolling by relator offering to
retain him as counsel by paying him a fee for the "use

of his name.'' It would seem this offer was made on the possible theory that one good turn deserves another, or in accordance with the formula: you tickle me and I'll tickle you—witness the court's query: ''You say you were employing him because you *needed* him as counsel?'' So questioned, relator responded: ''I don't suppose we *needed* him but I thought it would be all right to employ him *if we were using his name.*'' The upshot of it was the prosecuting attorney declined the fee.

The testimony of three witnesses is preserved in the record, directed to what was said and done on the heels of the foregoing incident at Mr. Jones's office— Black, Jones and Dorian.

Mr. Black testified it was explained to the prosecuting attorney (by Mr. Jones) that ''it would have to be started in the name of James C. Dorian, prosecuting attorney. *I believe you* [Jones] *explained to him* [Dorian] *that he didn't have to sign it,* but that they would have to use his name, and he said all right.''

We shall not set out the testimony of Mr. Jones and Mr. Dorian in full. The substance will do.

Mr. Dorian testified, in effect, that the lawyers present (Mr. Jones, Judge Smallwood and himself) were of the opinion that the prosecuting attorney had no discretion in the matter whatever; *i. e.,* that he, Dorian, was obliged to allow the use of his name.

Mr. Jones testified in part: ''I turned to the statutes of 1899, volume 1, to the form laid down there on page 50 of forms, to the form for *quo warranto.* I had it right before me, and I said, 'Jim,' I always called him Jim, I says, 'We are talking of bringing this proceeding, and we will have to use your name. I know, I said, we cannot do it without your consent.' I read the form over to him.''

All hands being of the opinion the prosecuting attorney had no discretion, and they had the right to

use his name, Mr. Dorian *"consented"* they might *"go ahead."*

After the information was drawn, it was presented to him and he refused to sign it.    On this point the pith of his testimony, as we interpret it, was to the effect that his will or wish as prosecuting attorney ran counter to the proceeding.    Accordingly he refused to sign the information or take any part in the proceeding beyond the cold permission to "use his name"—a permission resulting from a concensus of opinion among the relator's lawyers and the prosecuting attorney, that the latter had no right to exercise any official discretion.

The prosecuting attorney did not exhibit the information to the court and says he was not present when it was exhibited.    Mr. Jones thinks he was in the court room but took no part in exhibiting it.

Mr. Jones further testified in substance that the prosecuting attorney, after declining to accept the fee, put his refusal to take part in the proceeding on the ground that he had friends in the Hurdland school district who were divided, and "he didn't want to make them mad" by taking sides; that when he presented and read the information to him Dorian said it was all right; that, as they would have to use his name, he, Jones, said "they would like for him to sign his name and he said he would rather not, but for us to go ahead and sign his name and do whatever was necessary to make it legal."

It appeared at the trial that Mr. Dorian assumed an attitude of hostility to the continuation of the case, he there expressing himself that the proceeding was improvident and not for the public good.    The clear purport of his statement to the court on this behalf was that the case got into court through a mutual misapprehension of the law relating to his discretion,

which discretion never had been exercised, and he wanted to exercise it at the trial, *nunc pro tunc,* if he had that power, to stop the case.

The foregoing statement of facts, findings, rulings and pleadings is sufficiently full for us to pass upon the aforesaid preliminary question.

I.   To our minds this record cannot be intelligently read and considered without coming to the conclusion that the prosecuting attorney of Knox county did not want to institute this proceeding; nor did he have any real or substantial part or lot in it.   From end to end the plan was, *first,* that he should take a fee and assume the role of a hired man; *second,* (refusing the fee) the plan still contemplated that he should be eliminated as an *official.*  This is so because it is plain that relator, through counsel, took part in persuading him that he did not have to sign his name or appear to do aught as an officer.   It is plain, too, that while relator wanted his "consent," he also wanted him to believe and helped to make him believe that he had no discretion not to consent.   In other words, he was quite willing to accept a *consent* based on *no-discretion* (a droll and indefensible solecism in the realm of sense) and to have the door of the court opened, using the prosecuting attorney as a mere lifeless key to unlock the door, under a theory of the law which, good or bad, his counsel believed in and acted on.   Their notion being that the officer could act colorably or nominally, and that they could act vicariously, it results that the case at bar is not a case in which the prosecuting attorney on behalf of the State of Missouri is responsible for relator's present plight, whatever that plight be.   We feel free, then, to look on the case as one unembarassed by elements of unfairness.   Neither relator nor his counsel were misled by the prosecuting attorney.   To the contrary, they led themselves; they chose, blazed out and took their own

path. In so doing, if so be they fell into a vat of error, it contained a pickle of their own contriving.

II. That the prosecuting attorney of a county in Missouri is charged with a high, present and discriminating duty in exhibiting an information in the nature of a *quo warranto;* and that (as a corollary) he has such corresponding discretion to go or not to go on as his oath of office, his learning in the law, his sense of official fitness and justice may dictate to him, results from the inherent character of the proceeding itself. For, be it remembered, the State is the reservoir of all power (through its executive, its legislative and its judicial branches) and it is fundamental that a private citizen may not intermeddle and that the State alone may inquire into the right of any person or corporation to usurp or intrude into the powers and duties of a governmental agency, like a public office, or a body corporate for public purposes. [Black v. Early, 208 Mo. 281, and cases cited.]

"At common law *quo warranto* proceedings, being for the purpose of inquiring into matters which concern a public right or of redressing a public wrong, must be in the name of the sovereign. In the United States the same rule prevails where the purpose of the proceeding is to inquire into a right or to redress a wrong concerning the State." [17 Ency. Pl. & Pr., 428.]

The same treatise announces the rule to be (p. 433): "The right of a private person to proceed in his own name without the interposition of the proper State officer depends entirely and exclusively upon statutory authority, and in the absence of such authority he has no right to proceed."

Now, observe, our statute (R. S. 1899, sec. 4457) charges the Attorney-General of the State and the prosecuting attorneys of the respective counties with the duty of speaking in the name of this sovereign

commonwealth, "in case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise." In such case, in matters of initiative, they wield the bolt forged by the law, no other hand may; they stand charged with the duty of exhibiting to the court an information in the nature of *quo warranto,* at the relation of any person desiring to prosecute the same. When such information has been once filed and proceedings commenced in a circuit court at the relation of such person, such prosecuting attorney or Attorney-General steps down from the exclusive stool of duty and responsibility, and, seating himself on a lower and more humble bench of power shared jointly with relator, he may not thereafter dismiss or discontinue such proceeding without his consent. [Sec. 4457, *supra.*] So much appears from that statute, and the case may proceed with the assumption that the power and duty of the prosecuting attorney to alone use the name of the State in *quo warranto* come down unimpaired, in full flower, until such time as the information is exhibited, filed and the proceeding commenced; and, with that point once reached, the relator thenceforward (but not before) shares with him the control and disposition of the litigation.

The statute uses the phrase *"shall* exhibit." It was argued in this court in State *ex inf.* v. Talty, 166 Mo. 529, that the phrase "shall exhibit" as therein used "means that the act itself must be done;" and that the prosecuting attorney had no discretion with respect to the matter, but was bound, as of course, to exhibit the information when requested to do so by a given relator. In disposing of that argument, this court (p. 559, *et seq.*) said: "That the word 'shall,' as generally used, is mandatory may be conceded, but it is a cardinal rule that 'the intention of an act will prevail over the literal sense of its terms' (Sutherland on Statutory Construction, sec. 219), otherwise it

might lead to absurd consequences, which could but be the result in this case if the statute be construed according to its strict letter. If the statute is to be interpreted in accordance with defendant's contention, the proceeding would be at the mere will or caprice of any person in position to prosecute it, and the Attorney-General, circuit or prosecuting attorney, as the case might be, a figurehead, a mere nonentity, and we are unable to believe that any such state of affairs was ever contemplated by the Legislature. The power of determining whether or not the action shall be commenced must exist somewhere, and from the very nature of the writ, its character and purpose, it should rest with the officer who represents the people of the State with respect to such matters.''

In the Talty case, People *ex rel.* Peabody v. Attorney-General, 22 Barb. 114, was cited and the following quoted therefrom with approval: ''Our Legislature has seen fit to invest the Attorney-General with this discretion. His office is a public trust. It is a legal presumption that he will do his duty; that he will act with impartiality. In this confidence he has been endowed with a large discretion, not only in cases like this, but in other matters of public concern. The exercise of such discretion is, in its nature, a judicial act from which there is no appeal, and over which courts have no control.''

We may borrow and use with profit more from the same case. Thus: ''The power merely is conferred; it is for him to determine whether a fit case is presented. As to everything but the form, the proceeding stands now as it did at common law.'' [See, in this connection, State *ex rel.* v. Meek, 129 Mo. l. c. 436.] ''The usurpation of an office, though it frequently involves little else than private rights, is, in the eye of the law, a public offense. The only remedy is by an action in the name of the people. It

is a public prosecution, instituted and conducted by the public prosecutor *under his official obligation and responsibility.* It is not the province of the court to control his discretion, or to authorize a private prosecutor to assume his office, and in his name to wield the power of public prosecutor.''

If, now, the court itself may not authorize a private prosecutor to go on, how much less may a prosecuting attorney (as here) strip himself of his official prerogative, loan it to another and authorize that other to go on?

We come, naturally, then, to the point of inquiring *how* the prosecuting attorney may evidence his exercise of official discretion and prerogative in exhibiting an information in *quo warranto?* That the information itself need not in terms be based on his oath of office or be authenticated by a jurat is clear. But it is equally clear that back of the information and back of the discretion exercised is the sanction and solemnity of a guiding, chastening and steadying official oath. What, then, shall he do to show that he has measured up to the standard of the law? May he, so to speak, farm out the privilege of exercising so nice, so powerful an official function? May he, as it were, loan his official arms and armor to those who ''have an ax to grind''—to those who have private rights to enforce, by giving to them ''the use of his name''? The answer is: He may not. The maxim, *delegatus non potest delegare,* blocks the way. He must consider, weigh and then act. His *act* is evidenced by his signature to an information in due form and its exhibition in court. He may not avert his face and wash his hands of responsibility, play the idle role of listlessly winking at the use of his name by others as was done in the case at bar; nor may such others receive at his hand as a gift the right to use his name in a proceeding instituted on behalf of the people.

In a note, citing respectable authorities, on page 441 of 17 Ency. Pl. & Pr., the matter is summed up as follows:    ''It is the common law which authorizes the State's attorney to file informations, both in ordinary criminal prosecutions and in those prerogative rights where he represents, as Attorney-General, the sovereignty of the State.    This common law power is inherent in the office of the State's attorney, and in its exercise he performs the functions which cannot be taken away only by the clear terms of the statute.''

If it be true that the functions of the prosecuting attorney in *quo warranto* are functions ''which cannot be taken away only by the clear terms of the statute,'' it would follow, necessarily, that what cannot be clipped off and *taken* away by the court ought not to be *given* away by the prosecuting attorney through caprice, pique, policy, distaste, inattention, design or otherwise.

In Attorney-General v. Sullivan, 163 Mass. 1. c. 448, it was said:    ''But no private individual at common law has the right to use the name of the Attorney-General for the purpose of suing out such a writ, or of bringing such an information.''    To the same effect is Commonwealth v. Lexington & Harrodsburg Turnpike Road Co., 6 B. Mon. 397.

Absent the common law right in a private person to use the prosecuting attorney's name, it only remains to add that, as said before, no such right to institute a proceeding in *quo warranto* is conferred by our statute.    It is from the fertile womb of the common law that the incidents of *quo warranto,* in the precise particulars under discussion, have birth.    [State *ex rel.* v. Meek, *supra.*]

Applying to this case the foregoing reasoning and propositions of law, it is put beyond cavil or question that what was done here was in no just sense the act of the prosecuting attorney.    It was not the exercise

of any official discretion whatever.    It was mere non-
action on his part, the mere putting aside of duty and
power, a vain attempt to give to relator's counsel offi-
cial power not theirs, powers pertaining to Dorian—
his to hold and keep, not to loose or give.    Therefore
it is that the process of the circuit court of Knox
county was improvidently used, and that the proceed-
ing (begun in a misconception of the law) had no le-
gal birth or life and was properly dismissed.

In what has been said we have laid no stress upon
the tardy wish of the prosecuting attorney, expressed
at the trial, that the case be dismissed.    He had lost
the right to express wishes or control the litigation.
Statutory opportunity had knocked at his official door
unavailingly and, rebuffed, had turned away from him.
It was left alone for the court to assert the dignity of
the law in the control of its own process on the facts
uncovered; and this the court well did.

III.    We are cited to State *ex rel.* v. Campbell,
120 Mo. 396, as holding a contrary doctrine.    So far
as that case is reported, the trouble with the informa-
tion does not appear.    It does appear that a demurrer
was filed, and that demurrant had judgment.    The
grounds of the demurrer are not set forth.    However,
in the brief of counsel it is insisted that the petition
should be dismissed because not signed by the prose-
cuting attorney of Phelps county, but by a private cit-
izen not under any oath of office; and the learned
judge who wrote the opinion was cited to certain crim-
inal cases as authority.    In disallowing the contention,
he treated the matter from the standpoint that *quo
warranto* was only *quasi*-criminal in its nature and,
therefore, the rules which apply to informations of a
*criminal* character and require them to be signed and
authenticated by the prosecuting attorney, do not ap-
ply in instances like the present.    There was no dis-
cussion of the philosophy of the theory of that *dictum.*

We find no fault with the proposition that *quo warranto* is only *quasi*-criminal in its nature. It may be said to be civil in its nature to all intents and purposes, though still borrowing and using certain forms and punishments peculiar to criminal law. We have examined the demurrer in our files in the Campbell case. No ground is set forth in that pleading relating to the authentication or signature of the prosecuting attorney to the information, even if the signature to a pleading could be struck at by a demurrer—a proposition not at all clear. In that case this court had in judgment the sole question whether the demurrer was properly sustained on the grounds mentioned in it. Evidently, what was said concerning the signature of the prosecuting attorney and the authentication of informations in *quo warranto* was mere *obiter,* used by the by to brush away the contention of defendant's counsel as formulated in his brief on that behalf, and which contention, under the rules of appellate practice, had no place there. The Campbell case is, therefore, no authority for relator's position; nor, we make bold to say, can any well reasoned out authority be found. The precedents in the books are against relator; the uniform practice, as well as the good sense of the thing, lie the same way. Common usage is not to be lightly departed from. [Donnell v. Wright, 199 Mo. l. c. 316.]

We conclude the case was well decided on the point considered. Other questions, therefore, need no attention.

Let the judgment be affirmed. It is so ordered.
All concur.