STATE ex rel. MURDOCK v. RYAN et al.

No. 2331.   Decided June 24, 1912 (125 Pac. 666).

1. QUO WARRANTO—NATURE OF PROCEEDING—PARTIES ENTITLED TO
SUE.   The proceeding in the nature of *quo warranto*, regulated
by Comp. Laws 1907, sec. 3609 *et seq.*, authorizing an action
against one usurping a public office, or against a cor-
poration to forfeit its privileges and franchises, and
requiring the Attorney-General, when directed by the Gov-
ernor, to commence such action, and providing that when on
complaint or otherwise he has good reason to believe that any
case can be established, he shall commence an action, and that
he may on leave of court bring the action on the relation of
another, is to determine and vindicate rights of a public
nature only, and in all cases the Attorney-General must bring
the action in the name of the state on his own relation, or
on leave of court on the relation of another, except that one
claiming to be entitled to a public office unlawfully exercised
by another may bring an action in *quo warranto* in the name
of the state.   (Page 331.)

2. QUO WARRANTO—NATURE OF PROCEEDING—PARTIES ENTITLED TO
SUE.   Where a statute authorizes an individual claiming a right
to a public office to bring *quo warranto*, he alone may control
the action.[1]   (Page 333.)

3. SCHOOLS AND SCHOOL DISTRICTS—ACTION TO TEST VALIDITY OF
SCHOOL DISTRICT—RIGHT OF CITIZEN OR TAXPAYER.   A citizen
and resident taxpayer of an alleged high school district has no
such interest in the validity of the organization of the district
as to authorize him to sue in the name of the state to test
the validity of the organization of the district.   (Page 333.)

4. SCHOOLS AND SCHOOL DISTRICTS—CORPORATIONS—VALIDITY—
RIGHT TO QUESTION.   A school district is created by law, and
is an arm of the state, and the state alone may attack the
validity of its organization.   (Page 336.)

5. SCHOOLS AND SCHOOL DISTRICTS—ORGANIZATION—VALIDITY—
RIGHT TO QUESTION—REMEDIES.   A resident and taxpayer of an
alleged high school district may, under Comp. Laws 1907,
sec. 914 *et seq.*, contest an election to determine the question
of the organization of the district, but the remedy is not
exclusive, but cumulative with the remedy by *quo warranto*.
(Page 336.)

---

[1] State v. Elliott, 13 Utah, 200, 44 Pac. 248.

6. QUO WARRANTO—PARTIES ENTITLED TO ATTACK—ESTOPPEL. The state, unless estopped for special reasons, may assail the organization of any public corporation by *quo warranto*, and others having the necessary interest in the subject of the action may in a proper manner also assail such organization.    (Page 337.)

7. QUO WARRANTO—PARTIES ENTITLED TO SUE. Where there is a union of public and private interest, an individual in whom the private interest is vested may file an information setting forth the facts, including the nature of his interest, and present it to the Attorney-General, or state's attorney, who may bring such action to determine the rights of the individual, and, where the Attorney-General or state's attorney refuses to sue, the individual may present the information to a court having jurisdiction to hear actions in *quo warranto* to require the Attorney-General or state's attorney to show cause why he should not bring the action on the relation of the individual, and, on such application, the Attorney-General or state's attorney may show good cause why the action should not be instituted, and the court, if satisfied with the reasons, may refuse the application, but otherwise it may order the bringing of the action on the relation of the individual, and on a hearing render judgment granting proper relief.    (Page 337.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

*Quo warranto* by the State on the relation of T. J. Murdock, against Orson Ryan and others.

Judgment for relator.    Defendants appeal.

REVERSED AND REMANDED.

*W. S. Willis* and *E. A. Walton* for appellants.

*J. W. N. Whitecotton* for respondent,

FRICK, C. J.

The respondent asked and obtained leave from the district court of Wasatch County, Utah, to file an information and bring an action in the nature of *quo warranto* to test the validity of the organization of what is known as the "Wasatch High School District," in said Wasatch County, and

also to test the right of the several appellants to act as the trustees of the said high school district. The information was filed on the 1st day of June, 1910, and the action or proceeding was commenced and prosecuted in the name of the State of Utah on the relation of respondent. Respondent in the information, in substance, alleged that at the time the information was filed he was a citizen, a resident, and taxpayer within Charleston school district No. 4, in Wasatch County, Utah; that on the 8th day of February, 1908, a certain note was posted in five public places within said Charleston school district, giving notice to the electors that an election would be held at a time and place therein specified for the "purpose of voting by ballot for or against the organization of a high school district to be composed of two or more of the following named contiguous school districts within the county of Wasatch." The notice also contained the names of the districts, and stated the hours at which the polls would open and close; that, in pursuance of said notice, a pretended election was held in said Charleston district on the 3d day of March, 1908, a return of which was made, and which showed that a majority of the qualified electors of said district had voted in favor of uniting with the other school districts named for the purpose of organizing a high school district; that the ballots voted at such election were in the following form: "For High School $\frac{Ye}{N}$ ;" that no other notice of election was ever given and no other election except as stated ever held; that like notices were posted in each of the other school districts in said Wasatch County, and that a pretended election was held in each one at which similar ballots were cast and returns of said elections were made showing that a majority of the qualified electors in each of said school districts had voted in favor of organizing a high school district in said Wasatch County as aforesaid; that said school districts out of which said high school district was intended to be formed are not contiguous territory, and that there is no such municipal corporation as "Wasatch High School District;" that each of the appellants named, except Orson Ryan, "claims

to be a member of the board of trustees of the said alleged Wasatch high school district, and that appellant Orson Ryan claims to be ex-officio president of said alleged board by reason of the fact that he is the county superintendent of schools in said Wasatch County;" that each of said appellants holds said office without any right in law, and that they and each of them "do now usurp unlawfully upon the State of Utah, to the damage of the State of Utah, and against the peace and dignity thereof, and against the form of the statute thereof." It is also alleged in the information that the relator apprised the Attorney-General of the State of Utah of the foregoing facts, "and requested him in his official capacity to institute these proceedings, but to do so the said Attorney-General has refused and still refuses, to the great detriment of the State of Utah, and therefore, and that the wrongs done to the State of Utah in manner and form above set forth may be corrected, this relator institutes these proceedings on behalf of the State." The prayer is as follows:

"Wherefore, plaintiff demands judgment as to the validity of the organization of said Wasatch high school district, and as to the right of the defendants to exercise the office of trustees thereof."

The appellants assailed the right of the respondent to institute and prosecute the proceedings, and also assailed the jurisdiction of the court to permit him to do so, first, by a motion to rescind the leave granted by the court to file the information; second, by a general demurrer for want of facts; and, third, by special demurrer in which they assailed the power and jurisdiction of the court and the legal capacity and right of the respondent to prosecute the proceedings for and on behalf of the state. The motion and demurrers were overruled, and the appellants answered. In view of the conclusions reached by us, it is not deemed necessary to refer either to the defenses set forth in the answer or the findings of the court, except to state that findings were made in favor of the relator, and that judgment was entered in which it was adjudged and decreed "that Wasatch high school district has never been legally" organized, and has never had "and has

not now any legal existence." It was further adjudged "that the exercise of the office of trustees of Wasatch high school district by the defendants is a usurpation upon the State of Utah, is wrongful and without any warrant of law," and that the relator recover his costs. We have been thus particular in stating the claims of the relator and the relief granted by the court to show that the rights involved and the relief granted were clearly and entirely of a public, and not of a private nature.

Counsel for appellants contend that for the reasons just stated the court clearly erred in permitting the information to be filed by respondent as a private citizen and taxpayer, and further erred in not sustaining the special and general demurrers to the information, and in entering the judgment and decree as aforesaid.

The proceeding in the nature of *quo warranto* is regulated by statute in this state. Comp. Laws 1907, section 3609, is as follows:

"A civil action may be brought in the name of the state: (1) Against a person who usurps, intrudes into, or unlawfully holds or exercises, a public office, civil or military, or a franchise, within this state, or an office in a corporation created by the authority of the state; (2) against a public officer, civil or military, who does or suffers an act which, by the provisions of law, works a forfeiture of his office; (3) against an association of persons who act as a corporation within this state without being legally incorporated."

Section 3610 in substance, provides that a like action may be brought against a corporation (1) when it has offended against any law under which it was created; (2) when it has forfeited its privileges and franchises; (3) when it has committed or omitted an act amounting to a forfeiture of its franchises; (4) "when it has misused a franchise or privilege conferred upon it by law, or exercised a franchise or privilege not so conferred."

Section 3611 is as follows:

"The Attorney-General, when directed by the Governor, shall commence any such action; and when, upon complaint or otherwise, he has good reason to believe that any case specified in the preceding section can be established by proof, he shall commence an action."

Section 3612 is as follows:

"Such officer may, upon his own relation, bring any such action, or he may, on leave of the court, or a judge thereof in vacation, bring the action upon the relation of another person; and if the action be brought under sub. 1, sec. 3609, he may require security for costs to be given as in other cases."

Section 3613, among other things, provides that "a person claiming to be entitled to a public office unlawfully held and exercised by another may, by himself or by an attorney and counselor at law, bring an action therefor in the name of the state, as provided in this chapter." There are additional sections relating to what must be stated in the information, what courts have jurisdiction, the procedure and judgment, but none of these matters are material here. By a mere cursory examination of the foregoing provisions of our statute it will be seen that there is one, and only one, condition under which a private person may bring an action in the nature of *quo warranto* in the name of the state, and that is when he is "claiming to be entitled to a public office unlawfully held and exercised by another." In all other instances mentioned in the foregoing section the Attorney-General must bring the action in the name of the state on his own relation, or, "on leave of court," may bring it "upon the relation of another person." It is not necessary for us to pause at this time to show the nature and history of an action or proceeding in the nature of *quo warranto*. It must suffice to say that such a proceeding always was, and still remains, a proceeding for the purpose of determining or vindicating rights of a public, and not those of a private, nature. It is true that there are instances where statutes like ours permit a private person to bring the action in the name of the state to determine his right to a public office. Even in such

a case the state or public is interested, and, unless there be a statute expressly permitting the claimant of a public office to bring the action, it must be brought by some state official on the relation of the claimant of the office. To this effect is the great, we may say the overwhelming, weight of authority.

Where, however, there is a statute authorizing the individual claiming the right to a public office, to bring the action, he alone may control the same. *State v. Elliott*, 13 Utah, 200-206, 44 Pac. 248. By what we have said we do not mean that a person claiming an office in a private corporation may not bring an action in the nature of *quo warranto* to determine his right thereto.

By referring to the information or complaint filed by the respondent in this proceeding, it becomes apparent that he did not claim the right to any public office, nor, so far as the statements in the information are concerned, does it appear that he had any interest in the controversy except such as any other citizen and taxpayer has. Such an interest under the almost uniform holdings of the courts is entirely insufficient to sustain an action in the nature of *quo warranto*. The rule prevailing in most states is admirably stated in 32 Cyc. 1432, in the following words:

"The right to file an information in the nature of a *quo warranto* belongs to the state, and the institution of the action is a matter within the discretion of the Attorney-General; and the Attorney-General or other authorized state officer must institute *quo warranto* proceedings for the redress of injuries to the public right. Statutes abrogating the common law rule have not usually affected it so far as it concerns proceedings essentially public in purpose. *A refusal by the Attorney-General to prosecute in such cases does not give a private person the right to proceed, nor can the state officer be compelled to bring quo warranto proceedings.* Under statutes which authorize the Attorney-General or state's attorney to petition for a writ of *quo warranto* at the instance of private persons, if private rights are involved, the consent of the state officer is essential, and the writ cannot otherwise be issued for the redress of the private injury. Provision has been made by statute in several states for *quo warranto* proceedings to redress private injuries, whereby an applicant may obtain the writ upon showing an interest distinct from that of the public,

such as a right in himself to an office. In such cases the consent of the state is not required, and it need not be alleged that the Attorney-General has refused to act." (Italics ours.)

The foregoing text, with the exception of the italicized portion, to which we shall refer later, is fully sustained by the following well-considered cases: *People v. Healy,* 230 Ill. 280-296, 82 N. E. 599, 15 L. R. A. (N. S.) 603; *Haupt v. Rogers,* 170 Mass. 71, 48 N. E. 1080; *Porter v. People,* 182 Ill. 516, 55 N. E. 349; *State v. Taylor,* 208 Mo. 442, 106 S. W. 1023, 13 Ann. Cas. 1058; *Toncray v. Budge,* 14 Idaho, 621, 95 Pac. 32-33; *State v. Olson,* 107 Minn. 136, 119 N. W. 799, 21 L. R. A. (N. S.) 685; *City of Chicago v. People,* 80 Ill. 496; *Miller v. Town of Palermo,* 12 Kan. 14; *State v. Tracy,* 48 Minn. 497, 51 N. W. 613; *Steelman v. Vickers,* 51 N. J. Law, 180, 17 Atl. 153, 14 Am. St. Rep. 675; *Mills v. State,* 2 Wash. 566, 27 Pac. 560.

In *State v. Olson, supra,* the Supreme Court of Minnesota so well reflects the situation in this state, and so clearly states the reasons why private persons without special interests should not be permitted to interfere in matters such as are involved in this proceeding, that we take the liberty of adopting the following extract from the opinion in that case:

"We have, then, squarely presented the question whether, where the Attorney-General refuses to interfere, proceedings in the nature of *quo warranto* may be instituted in this court by a private citizen having no interest in the subject-matter of the controversy distinct from the general public to determine the legality of the proceedings had for the purpose of creating and organizing municipal subdivisions of the state. The question has been informally presented in other applications, and disposed of without a formal opinion. We deem it advisable at this time definitely to settle the question for guidance in the future. The question whether proceedings may be so instituted to determine the title of a person to a public office has often been before the court in one form or another, and in *Barnum v. Gilman,* 27 Minn. 466, 8 N. W. 375, 38 Am. Rep. 304, the right was denied. But in *State v. Dahl,* 69 Minn. 108, 71 N. W. 910, it was held discretionary with the court whether to grant the writ or not, where the office was filled by appointment, and not by election. But neither of those cases necessarily applies to one involving the legal existence of a municipal or *quasi* municipal corporation. Corporations of that character can be

created only by the state, acting through the legislative depart-
ment, and are brought into existence for public, and not private,
purposes. They derive their franchise from the state, and are
created for the better regulation and government of local affairs,
and for the enforcement of laws enacted for the general welfare.
Conceding for present purposes the right of a private citizen in
special cases to institute proceedings to test the right of another
to hold an office in such a corporation, and for which the applicant
for the writ is not a claimant, when he goes further with his ap-
plication, and seeks to attack the legal existence of the corporation
and its right to exercise its public functions, a right derived wholly
from the state, he encroaches upon a domain in which his interests
are not distinct from those of the other citizens, and he should not
be heard. In such a case the right to institute an inquiry into the
legality of the acts of the corporation should be confined to the
law officer of the state, the Attorney-General."

Numerous cases are there cited.

In *Miller v. Town of Palermo*, 12 Kan. *supra*, the rule is
stated in the headnote (which correctly reflects the decision
written by Mr. Justice Brewer) as follows:

"Private individuals who have no interest other than as citi-
zens, residents, and taxpayers of a municipal corporation cannot
maintain an action of *quo warranto* against such corporation."

In that case the purpose of the proceeding was to "dis-
solve" the corporation because not legally organized and to
oust the "pretended officers" of said corporation. Without
quoting from the cases, we say, without hesitation, that all
those that we have cited, as well as many others, will be found
to fully sustain what is said in the foregoing quotation.

So far as is disclosed from the information filed by re-
spondent, all his interest in this controversy consists in being
a citizen of this state and a resident and taxpayer within
Charleston school district, Wasatch County. It is not such
an interest as will authorize him, under our statute, to bring
an action of *quo warranto* to test the validity of a public cor-
poration, although such corporation is but a school district
with but limited and defined powers.

Such a corporation is, nevertheless, one that is created by
the laws of this state, and is an arm of the state through which

the state government, to some extent at least, is benefited. What right has a private individual, without some special interest, to rush into the courts of the state, and ask to dissolve the governmental agencies of the state? Although the organization of such an agency may be very irregular, yet the state, whose agent it is, for very good and sufficient reasons, may not desire the agency to be dissolved. Moreover, conditions may have arisen subsequent to the organization, however imperfect that may have been, which estop even the state from asking a dissolution of such corporation. Shall a private citizen be permitted to do what even the state might not be allowed to do with regard to one of its own creatures? There is, there can be, but one answer to the foregoing question. In this case the court proceeded to hear and determine matters in which the state was vitally interested without even inviting it to come into court, and this, too, after the only officer whose right it is under the law to bring such an action had refused to do so. Counsel for the respondent, however, contends that where, as in this case, the Attorney-General refuses to act, a private individual should be permitted to bring the action, and, unless this is done, there can be no remedy or relief for an injured individual. This does not at all follow.

In the first place, it appears from the information that the ground upon which respondent bases his right to maintain this action is that the votes cast at the election at which the proposition of whether a high school district should be organized in Wasatch County or not were not legally cast. If this be so—that is, if there were illegal votes cast for any reason—respondent had the right to institute an election contest under the provisions of Comp. Laws 1907, section 914 et seq., without asking leave from any one. True, such a proceeding would have to be commenced and prosecuted promptly, and could not have been commenced when this proceeding was instituted. It was, however, a remedy which the respondent could have invoked, and thus, instead of seeking to dissolve a public corporation, he could

have prevented its organization, and would thus not have been required to intermeddle with or assail any rights because none would have then existed. Counsel for appellants insist that such a contest was respondent's only remedy. Although there are some authorities to that effect, we think that the best reasoned cases are to the contrary.

It is certainly clear that the state, unless estopped for special reasons, can assail the organization of any public corporation in an action of *quo warranto,* and, if the state can, we can see no good reason why others in a proper manner cannot, provided such others have the necessary interest in the subject of the action. In the latter class of cases the courts hold that the remedies by contest and by *quo warranto* may be cumulative, and not exclusive.

Where the courts differ and divide is upon the proposition we have italicized in the quotation taken from Cyc., namely, whether the Attorney-General, in whom is vested a discretion to bring all such actions, may be controlled by the courts. Some courts hold that, although there may be some special interest in a private citizen which would entitle him to invoke the aid of the Attorney-General to bring an action on his relation, yet, if the Attorney-General refuses to bring such an action, the courts cannot control him or compel him to do so. In our judgment the better reasoned cases are to the contrary. In cases holding to the contrary it is held that, if there is a union of public and private interests, the individual in whom the private interests are vested may prepare an information in which all the facts are set forth, including the precise nature of his interest, and he may present such an information to the Attorney-General, or the state's attorney if there be one, who may bring such an action and demand that the Attorney-General, or the state's attorney, bring an action to determine such individual's rights. If in case there is some private interest the Attorney-General or state's attorney refuses to bring the action, the individual having such special interest may then present the information to the court having jurisdiction to hear

actions in *quo warranto* and may make an application to that court to require the Attorney-General, or state's attorney, to show cause why he should not bring an action upon the relation of the individual insisting as aforesaid. Upon such an application the Attorney-General may show that there are reasons or good cause why such an action should not then be instituted, and the court, if it should find the Attorney-General's reasons well founded, may refuse the application. Or, if the court finds that the individual's interests can be segregated and the state's interests preserved without prejudice to either, the court may order the Attorney-General to bring an action of *quo warranto* on the relation of such individual, and, upon a hearing, render such judgment, or grant such relief, as may be just and proper. To this effect are the following cases: *Lamoreaux v. Attorney-General,* 89 Mich. 146, 50 N. W. 812; *Cain v. Brown,* 111 Mich. 657, 70 N. W. 337; *In re Bank of Mt. Pleasant,* 5 Ohio, 250; *People v. Healy,* 230 Ill. 280, 82 N. E. 599, 15 L. R. A. (N. S.) 603. In the foregoing cases others are referred to which we need not cite here. In a later Ohio case entitled *Thompson v. Attorney-General,* 48 Ohio St. 552, 31 N. E. 742, it is held that the discretion of the Attorney-General cannot be controlled by the courts, but in that case the rights involved were entirely public. Where the rights are purely public, then many courts hold that a private citizen may not intervene to compel the Attorney-General to act, since such a citizen has no right to interfere with the duties of the Attorney-General.

The respondent, therefore, not only had a remedy by instituting an election contest, but in case he has a special interest he may also request the Attorney-General to bring an action of *quo warranto* upon his relation, and, if the Attorney-General refuses to do so, respondent may then invoke the aid of the court, and, if he can show that he has a special interest to protect, the court may order the Attorney-General to bring the action upon his relation, and the court will then determine his rights, and give him such relief as he may be entitled to under the law. Our statute, however, does not permit, nor

can the courts of this state allow, a citizen to interfere with the state agencies without showing that he has some special interest which requires protection.

Counsel for respondent has referred us to the case of *State v. Small,* decided in 1908 by the St. Louis Court of Appeals and reported in 131 Mo. App. 470, 109 S. W. 1079. Counsel seems to rely upon that case. A mere cursory examination, however, shows that that case was prosecuted under the provisions of the Revised Statutes of Missouri, section 4457. The general rule, and the one we have attempted to follow, is laid down by the Supreme Court of Missouri in the case of *State v. Taylor,* 208 Mo. 442, 106 S. W. 1023, 13 Ann. Cas. 1058, to which we have already referred. The case of *State v. Small,* therefore, has no application here. Counsel also cites the cases of *Roeser v. Gartland,* 75 Mich. 143, 42 N. W. 687, and *State v. Alexander,* 129 Iowa, 538, 105 N. W. 1021. The case from Michigan was in fact prosecuted by the state's attorney, and hence the state was represented by its counsel, and the case from Iowa, like the Missouri case, was prosecuted under a statute expressly authorizing the prosecution. (Code of Iowa, Annotated, 1897, section 4316.) These are the only cases counsel has referred us to, none of which is in point. We have not been able to find a case where, in the absence of an express statute, any court has permitted a private person to bring and maintain a case under facts and circumstances like those disclosed in the information filed in this case.

For the reasons stated, we are clearly of the opinion that the court erred in overruling the demurrers, and in proceeding to hear and determine the case. The judgment is therefore reversed, and the cause remanded to the district court of Wasatch County, with directions to sustain the demurrers, and, in view that respondent cannot maintain this proceeding for the reasons herein stated, said court is directed to dismiss the proceedings at the cost of respondent. Appellants to recover costs on this appeal.

McCARTY and STRAUP, JJ., concur.