ARCHIE C. GRANT AND FRANK McNAMEE, PETITIONERS, *v.* LLOYD S. PAYNE, COUNTY CLERK OF CLARK COUNTY, NEVADA, RESPONDENT.

No. 3324

November 19, 1940.          .          107 P. (2d) 307.

*Frank McNamee, Jr.,* for Petitioners.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *Roland H. Wiley,* District Attorney of Clark County, for Respondent.

## OPINION

By the Court, DUCKER, J.:

Original proceeding in mandamus to compel the county clerk of Clark County to place the names of Archie C. Grant and Frank McNamee upon the ballot of the general election to be held on the 5th day of November 1940 as candidates, respectively, of the democratic and republican parties for the office of state senator for Clark County.

On the 8th day of November 1938 L. R. Arnold was duly elected to the office of state senator of said Clark County, for the term of four years commencing on the 9th day of November 1938. Thereafter on or about the 3d day of January 1939 he resigned from said office and a few days later Charles Lee Horsey was duly appointed to fill the vacancy therein. The latter qualified for and

assumed the duties of said office and on the 29th day of July 1940 resigned the same. On the 31st day of July 1940 petitioners herein, Archie C. Grant and Frank McNamee, residents and electors of Clark County, each filed with the respondent clerk herein his declaration of candidacy for the purpose of having his name placed upon the democratic and republican primary election ballots for nomination, respectively, for the office of state senator of that county, and for the unexpired term existing for that office, caused by the resignation of said Horsey. No other person filed declarations for the office. Shortly after the primary election the respondent notified petitioners he would not place their names on the ballot for the coming November election.

Respondent filed an answer to the petition disclosing the foregoing facts, setting up his defense.

The question presented for determination was whether, under the constitution and laws of this state, an election could be held for the office of state senator of Clark County at the November election in 1940. We concluded that such an election could not be held, and pursuant thereto entered an order denying the petition and dismissing the proceeding, counsel having stipulated that an order on any decision we reached could be made in advance of a written opinion. Our reasons for the order follow.

The only provision for filling a vacancy in the office of state senator is found in art. IV, sec. 12, of the state constitution, as amended in 1922. It reads: "In case of the death or resignation of any member of the legislature, either senator or assemblyman, the county commissioners of the county from which such member was elected shall appoint a person of the same political party as the party which elected such senator or assemblyman to fill such vacancy; provided, that this section shall apply only in cases where no general election takes place between the time of such death or resignation and the next succeeding session of the legislature."

■ Petitioners contend that the words "general election" mean biennial election and by force of the proviso and certain statutes they mentioned, they were entitled to be voted for state senator of Clark County at the November election of this year. On the other hand the attorney-general contends that there was no vacancy that could be legally filled at such election; but to the contrary, that the vacancy, by reason of said constitutional provision, could be legally filled only by appointment by the board of county commissioners of Clark County, and that the appointee would be entitled to hold such office until the day succeeding the general election in November 1942. The position of the attorney-general is supported by reason and authority which persuaded us to the same conclusion. The meaning, we think, intended by the legislature and people of the term "general election" in the amendment, is the general election at which state senators are ordinarily elected. Under the constitution and statute enacted pursuant thereto, their term of office is for four years. Art. XVII, sec. 10, State Constitution, section 4780 N. C. L. In Clark County that term expires immediately after the general election in 1942. Art. IV, sec. 4, Stats. 1909, sec. 12, p. 10. If our construction of the term "general election" in the amendment is correct, no election can be had for state senator in Clark County except at such quadrennial election.

■■ It is said that such construction would run counter to the provisions of sec. 2438 N. C. L. which declares: "A general election shall be held in the several election precincts in this state on the Tuesday next after the first Monday of November, one thousand nine hundred and eighteen, and every two years thereafter, at which there shall be chosen all such officers as are by law to be elected in such year, unless otherwise provided for."

There is no conflict in this. A general election is held every two years, but it is general only for the purpose of electing officers designated by law to be elected at such

biennial periods. For instance, the election in 1940 was a general election as to those state senators whose terms expired in this year. As bearing on the supposed intention of the legislature and people in employing the term general election in art. IV, sec. 12, petitioners refer us to art. XVII, section 22, of the constitution, providing for the filling of vacancies occurring in state offices other than legislative offices, but there the constitution itself declares what is meant by general election, by stating that at the next general election the vacancy shall be filled by election for the residue of the unexpired term. No such declared intention appears in the constitutional provision for filling vacancies occurring in legislative offices. The term general election stands alone, and by the great weight of authority it means an election for the purpose of selecting officers who are by law authorized to be elected at that time. State of Nevada v. Collins, 2 Nev. 351; State ex rel. Bridges v. Jepsen, 48 Nev. 64, 227 P. 588; State ex rel. Griffin v. Superior Court, 70 Wash. 545, 127 P. 120; People v. Col, 132 Cal. 334, 64 P. 477; People v. Hardy, 8 Utah 68, 29 P. 1118; McIntyre v. Iliff, 64 Kan. 747, 68 P. 633; State v. Claussen, 216 Iowa, 1079, 250 N. W. 195; State ex rel. Evrard v. Roach, 269 Mo. 500, 192 S. W. 745; Norton v. Letton, 271 Ky. 353, 111 S. W. (2d) 1053, 1055; 20 C. J. 56. In Norton v. Letton, supra, it was said: "Elections participated in by the people are furthermore divided into 'general' and 'special' elections. The one (general election) is for the purpose of selecting 'an officer after the expiration of the full term of the former officer,' while the other (special election) may be one to fill a vacancy on a day other than the prescribed regular election day and before the arrival of the time of the general election for a full term. * * * "

The general rule of interpretation as to the meaning of the term general election is thus stated in State v. Claussen, supra [216 Iowa 1079, 250 N. W. 200]: "The next general election means the next general election at which, in pursuance of law, a vacancy may legally be

filled. Under all of the authorities called to our attention dealing with the subject, it is held that this does not necessarily mean the next ensuing general election, but the election at which the vacancy can be legally filled." [Citing the Nevada and other authorities.]

We think State ex rel. Bridges v. Jepsen, cited in the above case, is controlling here. We there interpreted the phrase "next general election" to mean the election prescribed by law for the election of county officers. A former attorney-general who represented respondent in that case took the same view. There is nothing in article IV, section 12, to indicate that a different conclusion is logical and would therefore justify us in overruling State ex rel. Bridges v. Jepsen, supra.

■ Petitioners insist that unless general election is held to mean the next biennial election, the proviso would be meaningless. They concede, however, that a situation could come about in which the proviso could become operative, but claim it is too remote for consideration. It is enough that a contingency could arise by which the proviso could become effective to rescue it from the charge of being a vain act.

■■ Force is given to our construction of the term general election in the amendment by the fact that neither in the constitution or by statute is any provision made for electing a senator at any intervening biennial. The exercise of legislative power would be essential to give it efficiency. This consideration alone was sufficient to authorize the denial of the writ prayed for, even if petitioners' contention, that general election means biennial election, had been allowed, because it is well established that an election is not an inherent right in the people and cannot be held in the absence of legislation clearly authorizing the same. Sawyer v. Haydon, 1 Nev. 75, 79; State ex rel. Bridges v. Jepsen, 48 Nev. 64, 227 P. 588; State v. Claussen, 216 Iowa 1079, 250 N. W. 195; State ex rel. McGee v. Gardner, 3 S. D. 553, 54 N. W. 606; People v. Col, 132 Cal. 334, 64 P. 477; State v. Ellison, 271 Mo. 123, 196 S. W. 751; State v.

Kozer, 115 Or. 638, 239 P. 805; Williams v. Glover, Tex. Civ. App., 259 S. W. 957; 20 C. J. 95; McCreary Elections, sec. 109.

In Sawyer v. Haydon, supra, the court said: "But when a people live under a Government which is regulated by written law, in which the powers, duties and responsibilities of the different officers of the Government and of the body of the people are clearly defined, and in which the law attempts to point out how and when citizens may exercise the elective franchise, and for what officers they may vote, we cannot conceive of a case in which the people could be entitled to vote for any officer without some provision of law, either express or clearly implied, authorizing such vote to be cast."

As stated in 20 C. J. 60, sec. 13: "The right to vote is a political right or privilege to be given or withheld at the exercise of the lawmaking sovereignty. It is not a natural right of the citizen, but a franchise dependent upon law, by which it must be conferred to permit its exercise. It can emanate only from the people, either in their sovereign statement of the organic law or through legislative enactment which they have authorized."

When the constitution was adopted in 1864, article IV, section 12, provided: "When vacancies occur in either House, the Governor shall issue writs of election to fill such vacancy."

With due expedition the legislature in 1866 set up ample machinery for the holding of such special election. See section 4797 N. C. L. The part of the above section relating to the filling of a vacancy in a legislative office was of course repealed by implication when the constitution was amended in 1922. The promptness of the legislature at that time in furnishing the needed legislation, and its failure to do so since the amendment in 1922, are, to say the least, significant.

Petitioners claim that such legislation has been enacted, and point to section 4813 N. C. L., as amended in 1939, c. 112, page 146. The claim may not be allowed.

The section, as amended, does not include state senators, which in a strict legal sense, are state officers. It was amended for the purpose of changing the rule declared by this court in State ex rel. Bridges v. Jepsen, supra, in relation to filling vacancies by election in county offices. While the constitution and statutes provide for the election of certain officers every two years, this, in itself, does not authorize the election of an officer not appointed by law to be elected at that time. The people are presumed to know what officers are designated by law to be elected at each biennial election, but in the absence of legislation they cannot be presumed to know when an election is to be held to fill a vacancy. State v. Superior Court, 140 Wash. 636, 250 P. 66; People ex rel. McKune v. John B. Weller, 11 Cal. 49, 70 Am. Dec. 754; People ex rel. Leverson v. Thompson, 67 Cal. 627, 9 P. 833, and cases cited therein; State ex rel. Sampson v. Superior Court, 71 Wash. 484, 128 P. 1054, Ann. Cas. 1914c, 591; Secord v. Foutch, 44 Mich. 89, 6 N. W. 110; State v. Kehoe, 49 Mont. 582, 144 P. 162.

█ It was insisted that the 1922 amendment to the constitution itself furnished the needed legislation. We are satisfied that it does not. The bare statement "general election" if accorded the meaning "biennial election" is wholly inadequate to express or imply a sufficient rule of legislative enforcement. To read such into the proviso would be judicial legislation, which courts, having due regard for the separation of the powers of our government, should scrupulously avoid. Whether it would be better policy that a vacancy in the office of state senator should be filled at the first election following the vacancy is none of our concern. The legislature or the people, as the case may be, formulate policy. The courts are given no hand in it.

ORR, J. I concur.

TABER, C. J., dissenting:

The election held on November 5, 1940, was in my

opinion, a general election within the meaning of the proviso in sec. 12, art. IV of the state constitution, as amended in 1922. Appointment by the county commissioners is to be made only in cases where no general election takes place between the occurrence of the vacancy and the next succeeding session of the legislature. Senator Horsey resigned July 29, 1940. Thus the general election of November 5, 1940, took place between the occurrence of the vacancy and the next session of the legislature.

To hold that "general election," as used in the proviso, means the election at which state senators are ordinarily elected, is to read into the proviso what the people did not put there. Amended sec. 12 of art. IV of the constitution relates to the filling of vacancies. It does not undertake to change either the time or manner of the regular and ordinary election of assemblymen or senators. In my opinion the names of Archie C. Grant and Frank McNamee should have been placed on the ballot for the general election of November 5, 1940, so that the voters of Clark County could choose one of them to fill the vacancy occasioned by Senator Horsey's resignation. The successful candidate would not have been elected for an ensuing four-year term, but only to fill the vacancy and serve until the general election of 1942.

Consider the effect of holding that "general election," in the amended constitutional section, means the election at which state senators are ordinarily elected. Let us say that a candidate for the office of state senator from Clark County is regularly elected at the general election of 1938. A vacancy later occurs, (1) in December 1938; or (2) after the legislative session of 1939 and before the general election in 1940; or (3) after said 1940 election and before the 1941 session of the legislature; or (4) after the 1941 legislative session and before the general election in November 1942. In every one of these situations except (4) the vacancy would, according to

the prevaling opinion, be filled by appointment. The only election would be the general election of 1942, and that, it seems to me, would not be one to fill a vacancy, but rather one to regularly elect a senator for the ensuing four-year term.

I think we should adopt a construction which gives effect to the intent and purpose of the framers of the section of the constitution under consideration, and of the people who adopted it. 16 C. J. S., Constitutional Law, p. 51, sec. 16, n. 39; 11 Am. Jur. 674, sec. 61, n. 18; State v. McNeill, 127 Wash. 157, 219 P. 852.

Respondent takes the position that even if the election of November 5, 1940, was a "general election" within the meaning of the proviso, the writ should nevertheless be denied because the said amended section of the constitution has not been followed up by special legislation providing for elections to fill vacancies in the office of state senator. It seems to me, however, that the constitutional provision itself (sec. 12 of art. IV), together with our statutes governing elections, provide a complete machinery for the filling of such a vacancy at a general election taking place between the occurrence of the vacancy and the next succeeding session of the legislature. State v. McNeill, supra.

As I read sec. 12, art. IV of the constitution of Nevada, as applied to the instant case, it means that where any general election takes place between the time of a vacancy in the office of state senator and the next succeeding session of the legislature, the vacancy shall be filled by election at such general election. It is said that such a construction amounts to judicial legislation, but is it any more so than to say that "general election," as used in the proviso, and as applied to this case, means general election at which state senators are ordinarily elected? If anything is to be read into the proviso, it would seem better that it be something which will carry out the intent of those who adopted the constitutional provision. Implication plays a very important role in

constitutional construction, and the intent of a constitutional provision may be shown by implications as well as by express words. 11 Am. Jur. 666, sec. 56; 16 C. J. S., Constitutional Law, p. 54, sec. 16, n. 43.

In the instant case, the time for filing declarations of candidacy had not expired when the vacancy occurred, and petitioners filed their declarations within the time limited by statute. All that was then required was the placing of petitioners' names on the ballot for the general election of 1940. In such a situation, it would seem useless and unreasonable to require special legislation for an election to fill the vacancy.

It may be further observed that if the election of November 5, 1940, was a "general election" within the meaning of the proviso, then, even if it be conceded, for purposes of discussion, that special legislation would be necessary for an election to fill the vacancy and that such legislation has not been enacted, there would still be no legal authority for filling the vacancy through appointment by the county commissioners, because the provision for appointment by them "shall apply only in cases where no general election takes place between the time of such death or resignation and the next succeeding session of the legislature." If, therefore, the November 1940 election was a "general election" within the meaning of the proviso, the vacancy could not in any event be filled through appointment by the county commissioners. This consideration tends to confirm the view that the true intent of amended sec. 12 of art. IV was that, in such a case as this, the vacancy should have been filled by the voters of Clark County at the general election on November 5, 1940.

Entertaining these views, the writ, in my opinion, should have been made peremptory.