HARRY K. BROWN, County Clerk of Washoe County, Nevada, Appellant, *v.* CLEL GEORGETTA, Respondent.

No. 3842

October 8, 1954.                    275 P.2d 376.

*Jack Streeter,* District Attorney, Washoe County; and *W. T. Mathews,* Attorney General, for Appellant.

*Summerfield and Heward,* of Reno, for Respondent.

# OPINION

*Per Curiam:*

This is an appeal from decree of the trial court entered October 6, 1954, granting a permanent injunction restraining appellant as county clerk of Washoe County from placing upon the ballot for the forthcoming general election the names of Alan Bible, Democratic candidate for the office of United States Senator and Ernest S. Brown, Republican candidate for the same office. Following certification of these names to him as county clerk by the secretary of state, appellant proposed to place them upon the ballot for election to the unexpired term of the late Senator P. A. McCarran. Bible was named as candidate by the Democratic State Central Committee and Brown was named as candidate by the Republican State Central Committee pursuant to provisions of sec. 2429, N.C.L. 1929, 1943–1949 Supp.

Following the death of Senator McCarran, Governor Charles H. Russell appointed Ernest S. Brown to fill the vacancy in office thereby created. The question was thus presented whether the appointment so made is for the entire unexpired term of office or is to extend only until the ensuing biennial election. To resolve this question the present suit was brought by respondent as taxpayer and elector.

The injunction was granted below upon the theory

that the appointment was for the entire unexpired term of office, the trial judge ruling that no vacancy in office exists to be filled by election, the vacancy having already been filled by appointment.

Section 2593, N.C.L.1929, provides for the manner in which vacancies in this office shall be filled. It reads: "In case of a vacancy in the office of United States senator caused by death, resignation, or otherwise, the governor of Nevada may appoint some qualified person to fill said vacancy, who shall hold office until the next general election, and until his successor shall be elected and qualified."

1. The first question presented upon this appeal is as to the meaning of the words "next general election" as used in that statute. Respondent contends that they must refer to the next election prescribed by law for the regular filling of the office. In this case such would be the general election of November, 1956. Appellant contends that the words must have reference to the general election to be held next month.

The meaning of the language in question has been considered by this court in State ex rel. Bridges v. Jepsen, 48 Nev. 64, 227 P. 588, and Grant v. Payne, 60 Nev. 250, 107 P.2d 307, 132 A.L.R. 568, both of which are cited by respondent in support of his contention. In the Bridges case the court was dealing with the filling of a vacancy in the office of county clerk under section 4813 N.C.L., which then read: "When any vacancy shall exist or occur in the office of county clerk, or any other county or township office, except the office of district judge, the board of county commissioners shall appoint some suitable person to fill such vacancy until the next general election." This court there held the term "general election" to refer to a general election at which county officers regularly were to be elected.

In the Grant case the court was dealing with the filling of a vacancy in the office of state senator under

Art. IV, sec. 12 of the Constitution of Nevada (sec. 63, N.C.L.1929) which provides for appointment by the county commissioners and then states: "* * * this section shall apply only in cases where no general election takes place between the time of such death or resignation and the next succeeding session of the legislature." The term "general election" was there held to refer to a general election at which state senators regularly would be elected.

Respondent directs our attention to the following language in the latter opinion, 60 Nev. 254, 107 P.2d 307, 309: "A general election is held every two years, but it is general only for the purpose of electing officers designated by law to be elected at such biennial periods. * * * [B]y the great weight of authority it means an election for the purpose of selecting officers who are by law authorized to be elected at that time." The same construction was placed upon the language in question in the Bridges case.

In the Grant case, however, a significant distinction is made by the court. Reference is made to the provisions of Art. XVII, sec. 22 of the Constitution of Nevada (sec. 199, N.C.L.1929, enacted in substance by the legislature as sec. 4812, N.C.L.1929). This constitutional provision reads: "In case the office of any justice of the supreme court, district judge, or other state officer shall become vacant before the expiration of the regular term for which he was elected, the vacancy may be filled by appointment by the governor, until it shall be supplied at the next general election, when it shall be filled by election for the residue of the unexpired term."

With reference to this section this court stated, 60 Nev. 250, 255, 107 P.2d 307, 309: "As bearing on the supposed intention of the legislature and people in employing the term general election in art. IV, sec. 12, petitioners refer us to art. XVII, section 22, of the constitution, providing for the filling of vacancies occurring

in state offices other than legislative offices, but there the constitution itself declares what is meant by general election, by stating that at the next general election the vacancy shall be filled by election for the residue of the unexpired term. No such declared intention appears in the constitutional provision for filling vacancies occurring in legislative offices. The term general election stands alone, * * *."

Respondent contends that the words "general election" as used in sec. 2593 with reference to United States Senators "stand alone" with no reference to a residue or balance of term to be filled by election and with no "declared intention" in that regard. He contends that the construction adopted in the two cited opinions of this court must, therefore, control.

It is not enough, however, that the words appear to stand alone in sec. 2593, or that that section alone does not appear to declare any intention with respect to the filling of a residue or balance of the term by election. That statute was enacted pursuant to the authority of the seventeenth amendment to the Constitution of the United States, the final and controlling authority upon the manner of selection of United States Senators. That amendment provides: "The senate of the United States shall be composed of two senators from each state, elected by the people thereof, for six years; and each senator shall have one vote. The electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislatures. When vacancies happen in the representation of any state in the senate the executive authority of such state shall issue writs of election to fill such vacancies; *provided,* that the legislature of any state, may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct."

This amendment was proposed by Congress December 4, 1911, was proposed to the legislatures of the several

states on May 15, 1912, and was declared in force May 31, 1913. It was ratified by the State of Nevada in company with 35 other states.

The intention is thus clearly expressed by the controlling authority (1) that the office of United States Senator shall be filled by the election of the people; (2) that vacancies in such office shall likewise be filled by election subject only to temporary executive appointment. This being the clear policy of the Constitution and that policy having been expressly approved by Nevada's ratification, our state statute enacted pursuant to such Constitutional authority must have been enacted with such policy in mind. It must, then, be construed with like intent.

Respondent contends that since no time is fixed by the Constitution within which the governor shall act by writ of election; since no time limit is placed upon the extent of his "temporary appointments"; since the election specified is such "as the legislature may direct," his construction of sec. 2593 is not necessarily in conflict with the federal expression of policy.

Under his construction, however, no vacancy ever could be filled by election, since each appointment of necessity would carry over throughout the entire unexpired balance of the term; the appointment in no sense could be regarded as temporary; the legislature could not be said to have directed the filling of vacancies by election but on the contrary must be regarded as having directed that they shall not be so filled. We can conceive of no more direct opposition to the clear intent of the Constitution.

The Committee on Privileges and Elections of the United States Senate in a report on the seating of Senator Gerald P. Nye (Senate Election Cases 1913–1940, Senate Document No. 147, 76th Congress, 3rd session) dealt with a North Dakota statute providing for the filling of vacancies in the office of United States Senator. It stated in part, "Certainly the reasonable presumption is that if the Legislature of North Dakota had intended

to incorporate into the act of March 15, 1917, [Laws 1917, c. 249] supra, the provisions of the seventeenth amendment to the Constitution of the United States, it would have given the executive of that State the power, as the seventeenth amendment provides, to make a temporary appointment only, until the people should fill the vacancy by election."

We conclude that the words "next general election" as used in sec. 2593, when considered in the light of the intention of that section as drawn from the federal provision to which it owes its existence, must be construed to mean the ensuing biennial election.

This conclusion, in our view, is supported by the construction consistently placed in practice upon the section in question by executives of this state since the seventeenth amendment became effective. The appointment of Charles B. Henderson in January, 1918, to fill the vacancy caused by the death of Senator Francis G. Newlands was a temporary appointment. The unexpired balance of Senator Newlands's term was filled by the election of Senator Henderson in November, 1918. The appointment of Berkeley L. Bunker in 1940 to fill the vacancy caused by the death of Senator Key Pittman was a temporary appointment. The unexpired balance of Senator Pittman's term was filled by the election of James G. Scrugham in November, 1942.

2. It is next contended by respondent that, irrespective of the form and nature of any of the statutes on the subject, there is no "next" election for filling any vacancies until the general election of 1956. This contention is predicated upon the proposition that because the county clerk, complying with statutory requirements of the absent voters' law, secs. 2553–2567, N.C.L. 1929, has already mailed out several hundred ballots to absent voters, the 1954 election is already under way; that the actual personal casting of ballots on November 2, 1954 is merely a step in such election; that to change

the ballot at this time by adding the names of the two candidates to be elected November 2, 1954 to fill Senator McCarran's unexpired term will permit personally voting electors to vote for such candidates while the electors receiving the absent voters' ballots (some of which have already been returned) are not so permitted, and that the delay in reprinting the ballots will prevent other eligible absent voters from voting at all by reason of their long distance from their voting places. It is contended that an election held under such conditions would be void.

Perhaps no statute on our books has been subject to more amendments than our election laws. That the legislature has constantly sought improvement therein cannot be doubted. That any member of the senate or assembly has ever felt that perfection in the election laws could be achieved, no one would have the optimism to assert. Prior to the absent voters' law of 1921, this state had no statute providing for an absent voter's ballot. Yet prior to the effective date of that act many persons "by reason of the nature of their vocation or business or other causes [were] unavoidably absent from the polls in the county of their residence on the day of election." (We have quoted the purpose of the act as gleaned from its title.) Stats. 1921, 153, as amended Stats. 1925, 39. The contention, if valid, would invalidate sec. 25 of the primary election law, as amended Stats. 1947, 478, sec. 2429, N.C.L.1929, under which certain nominations under certain conditions may be made up to thirty days prior to the November election, whereas under the absent voters' statute the clerk shall immediately mail out the absent voters' ballots when applied for, though the same may be demanded thirty days prior to the date of election. And sec. 2429, prior to the amendment, permitted nominating petitions to be filed fifteen days before the November election. The answer to the contention, in short, is that voting by absent voters' ballot is a privilege, not a right. Under

our statutes providing for late nominations under certain conditions it is inevitable that circumstances will arise whereunder ballots containing the names of late nominees will not reach absent voters living in distant parts of the world. If the names of the nominees are otherwise lawfully placed upon the ballots personally voted at the polls, it could not reasonably be contended that the election for the particular office should be declared void. It is an equally complete answer to note that in fixing the time before election in which nominations may be made where a vacancy occurs after the primary election, and in fixing the time for mailing ballots to absent voters, the legislature must be presumed to have chosen these periods as reasonable ones to accomplish the purposes sought.

Hunt v. Superior Court, 64 Ariz. 325, 170 P.2d 293, relied upon by respondent for its use of the expression that there could not be one kind of ballot for those in the military service and a ballot with other or different names for those not in the military service, involved the construction of statutes different from those now under consideration, and is otherwise clearly distinguishable.

3. It is next contended that the provisions of sec. 25 of the primary election law, as amended 1947, 478, sec. 2429 N.C.L.1943–1949 Supp., relate only to the filling of a vacancy where a person nominated at the preceding primary election has died, resigned or for some other reason ceased to be a candidate. The section reads in part as follows: "Vacancies occurring after the holding of any primary election shall be filled by the party committee of the county, district or state, as the case may be. Such action shall be taken not less than thirty days prior to the November election." It is contended that this section has no application to a vacancy in an office to which no candidate was to be nominated in the 1954 election. But that Senator McCarran's death created only a vacancy in office and not a vacancy in nomination

is contrary to the holding of this court in Penrose v. Greathouse, 48 Nev. 419, 233 P. 527, 529. There this court, speaking through Mr. Justice SANDERS, said:

"We quite agree with the learned attorney-general that the word 'vacancies' as used in section 25 in respect to nonpartisan nominations means a vacancy in some such nomination. But, as said in State v. Hostetter, supra, where, by reason of death, as in this case, a vacancy in an office occurs shortly before a general election at which some one to fill the office for the unexpired term should be chosen, and no one has been nominated to said office (as in this case), there is a vacancy in the nominations within the meaning of the election law, and such a vacancy may be supplied, at any time prior to the election, by a nomination authenticated in the mode pointed out by the ballot law. This ruling of the court is followed in State v. McClure, 299 Mo. 688, 253 S.W. 743.

"We see no sufficient reason for saying that a vacancy could occur only by the death, resignation, or removal of a nonpartisan candidate nominated at a primary election. Section 2812, Revised Laws, provides for the election of some one to fill an unexpired term where the vacancy in the office occurs before a general election; and hence the provision found in section 25 of the primary election law 'if there be no such person, then the vacancy may be filled by a petition' is broad enough to permit the qualified electors of a judicial district to make a nomination by petition authenticated in the mode pointed out by the statute."

State v. McClure, supra, thus followed with approval in Penrose v. Greathouse, treats vigorously of the same subject. The same contention, under a similar statute, was made that the vacancies referred to do not mean vacancies in an office. But the Supreme Court of Missouri held: "But there is no reason for saying that such a vacancy could occur only by the death, resignation, or removal of a candidate nominated. Section 4786 [V.A.M.S. § 105.030 (corresponding with sec. 2593 in

the case at bar)] provides for the election of some one to fill an unexpired term where the vacancy in the *office* occurs before a general election. By the force of that statute a vacancy in an office, occurring after a primary election, creates on the nominated ticket a vacancy which did not exist prior to the occurrence of the vacancy in the office, a vacancy which [the statute] authorizes the political committee to fill." We hold respondent's contention in this regard to be without merit.

The judgment of the district court is reversed, and said court is directed to enter judgment denying the petition for permanent injunction and vacating the temporary injunction. This order shall be effective immediately. Let remittitur issue forthwith.