ROBERT W. LUECK, Movant, *v.*
ROBERT W. TEUTON, Respondent.

No. 53596

IN THE MATTER OF THE COMMISSION OF THE HONORABLE
ROBERT W. TEUTON, DISTRICT JUDGE.

No. 54238

November 12, 2009                                    219 P.3d 895

*Robert W. Lueck, Esq.*, and *Robert W. Lueck*, Las Vegas, for Movant.

*Catherine Cortez Masto*, Attorney General, and *C. Wayne Howle*, Solicitor General, Carson City, for Governor Jim Gibbons and the Honorable Robert W. Teuton.

*Abrams Law Firm, LLC*, and *Jennifer V. Abrams*, Las Vegas, for Amicus Curiae State Bar of Nevada, Family Law Section.

## OPINION

By the Court, CHERRY, J.:

Under the Nevada Constitution, when a district judge's office is vacated before the office's term expires, the Governor may appoint an individual to temporarily fill the office until "the first Monday of January following the next general election." Nev. Const. art. 6, § 20(1) and (2). In July 2008, a district judge vacated the office, and a temporary appointment later was made, several weeks before the November general election. The judge's office, however, was not included on the 2008 ballot. Instead, the appointed judge was commissioned to serve until the office could be filled by virtue of the 2010 general election, giving rise to the question of concern to this court: whether the commission's extension beyond the first Monday in January following the 2008 general election is valid.

That question initially was brought to this court's attention when movant, a private Nevada citizen, sought leave to file a petition on behalf of the State of Nevada for a writ of quo warranto removing the judge from office. As we conclude that movant lacks standing, however, we consider the merits of the judge's commission under our supervisory responsibilities over the judicial branch.

The legitimacy of the extended commission depends on the meaning of "next general election," as used in the Nevada Constitution provision noted above. Thus, in resolving this issue, we address whether "next general election" means the election most immediately following the appointment or, as has been asserted, the next general election in which the vacancy may be filled in strict compliance with all election deadlines. In view of the apparent intent behind the Nevada Constitution's "next general election" language to

allow Nevada citizens to elect a new district judge as soon as possible after an office becomes vacant and to correspondingly limit the Governor's appointment powers, we conclude that judicial vacancy appointments expire on the first Monday in January after the first general election following that appointment, without exception. Here, then, with regard to the temporary appointment at issue, the appointment expired on the first Monday in January after the November 2008 general election.

## FACTS AND PROCEDURAL HISTORY

In July 2008, a district judge serving the Family Court Division of the Eighth Judicial District Court resigned, resulting in a vacancy approximately two and one-half years before that office's term was set to expire. The vacancy was filled by temporary appointment in August 2008, when Governor Jim Gibbons appointed Judge Robert W. Teuton to the office, beginning August 22, 2008. Judge Teuton's written commission designates the first Monday in January 2011 as its expiration date. Although a general election was held in November 2008, the district judge office was not included on the ballot. Thus, Judge Teuton has continued to serve in the office since 2008.

Under Article 6, Section 20(2) of the Nevada Constitution, when the Governor fills a vacant district judge office, the office's term "expires on the first Monday of January following the next general election." Arguing that, here, "next general election" meant the 2008 general election, rendering Judge Teuton's commission invalid beyond January 5, 2009, a private Nevada citizen, movant Robert W. Lueck, moved this court for leave to seek a writ of quo warranto to remove Judge Teuton from office, after the attorney general denied Lueck's written requests that she institute such quo warranto proceedings. Judge Teuton opposed the motion, primarily contesting Lueck's standing to file a petition for a writ of quo warranto, as Lueck has only a "private citizen" interest in obtaining the requested relief. Lueck replied to Judge Teuton's opposition, as permitted. After reviewing those initial filings, we directed Lueck and Judge Teuton to file supplements further addressing the standing issue.

Concerned with Lueck's standing and cognizant that the question posed by his motion raised concerns of statewide importance regarding the validity of Judge Teuton's continued service as a district judge, and based on this court's responsibility to oversee the judiciary, we concluded that further inquiry was warranted. *See* Nev. Const. art. 6, § 19; *Halverson v. Hardcastle*, 123 Nev. 245, 261-62, 266, 163 P.3d 428, 440, 443 (2007) (noting that courts have "inherent power to . . . preserve the integrity of the judicial process" and that this court possesses "supervisory authority and duties over the proper administration of justice"); *Goldman v. Bryan*, 104 Nev.

644, 654, 764 P.2d 1296, 1302 (1988) (stating that "under its general power of superintendence," this court "may exercise its administrative authority to conduct an inquiry and take such action as deemed necessary, short of removal of a judge from office"), *abrogated on other grounds by Halverson*, 123 Nev. 245, 163 P.3d 428; *see also* NRS 34.160 (recognizing that this court may issue a writ of mandamus to require a public officer to perform an act legally required by his or her office); *cf.* Nev. Const. art. 6, § 4 (providing that this court has the power to issue writs of mandamus). Accordingly, this court entered an order directing the Governor and Judge Teuton to show cause why Judge Teuton's commission and service in office beyond January 5, 2009, should not be declared invalid under Section 20(2), and why this court should not issue a writ of mandamus directing the Governor to declare Judge Teuton's office vacant. *See* NRS 3.080(1) (stating that "[t]he Governor shall declare vacant the office of district judge"). We also invited the Family Law Section of the State Bar of Nevada to file an amicus curiae brief addressing the validity of Judge Teuton's commission and service in office beyond January 5, 2009. Governor Gibbons, Judge Teuton, and the Family Law Section have timely responded to our order, arguing that interpreting Section 20(2) as mandating the office's placement on the 2008 general election ballot would be unworkable under Nevada's election laws, and therefore, that Judge Teuton should hold office until after the next election in 2010.

## DISCUSSION

Currently before this court, then, are two subjects. First, does Lueck have standing to pursue quo warranto proceedings and, if so, should leave to file the petition be granted? Second, what is the meaning of Section 20(2) and what is the provision's effect on the validity of Judge Teuton's continuing service in office?

*Lueck's motion*

Quo warranto generally is available to challenge an individual's right to hold office and to oust the individual from the office if the individual's claim to it is invalid or has been forfeited. *See Secretary of State v. Nevada State Legislature*, 120 Nev. 456, 93 P.3d 746 (2004). This court is vested with original "power to issue writs of . . . quo warranto" by the Nevada Constitution Article 6, Section 4. Quo warranto proceedings typically are governed by NRS Chapter 35, which provides for "civil actions" against persons who unlawfully hold a public office, NRS 35.010(1); *see State Et Al. v. City of Reno*, 70 Nev. 167, 262 P.2d 953 (1953), unless that chapter fails to provide adequate relief. *See Halverson*, 123 Nev. at 257 n.8, 163 P.3d at 437 n.8 (stating that, "while NRS Chapter 35 creates an al-

ternative remedy, it does not impact this court's original power [under Nevada Constitution Article 6, Section 4] to consider writ petitions seeking quo warranto relief''); *State v. Sadler*, 25 Nev. 131, 58 P. 284 (1899) (recognizing that, under the circumstances asserted therein, the statutes preceding NRS Chapter 35 failed to provide adequate relief in the event that the attorney general refused to institute quo warranto proceedings and, in light of this court's original constitutional jurisdiction over writs of quo warranto, allowing a private individual claiming title to the office to pursue such relief on behalf of the state).

■■■■■■

The Legislature has not authorized quo warranto petitions by private citizens with only a general interest in seeing this state's laws upheld. Under NRS Chapter 35, only persons ''claiming to be entitled to a public office,'' NRS 35.050, or otherwise through the attorney general and ''on the leave of the court,'' NRS 35.040, may commence a quo warranto action against the alleged unlawful officeholder or usurper. *See Harvey v. Dist. Ct.*, 117 Nev. 754, 759-60, 32 P.3d 1263, 1267 (2001). Thus, the NRS Chapter 35 provisions that address who may institute a quo warranto action to oust an individual from office do not permit a person with only a general interest in quo warranto relief to pursue such a remedy, absent participation from the attorney general and leave of the court.

Here, the attorney general declined to institute a civil action in the nature of quo warranto against Judge Teuton, and Lueck does not claim to be entitled to Judge Teuton's office. Lueck therefore does not fit within either provision of NRS Chapter 35 that addresses who may institute a quo warranto action to oust an individual from office, and consequently, he does not have standing to institute such an action under that chapter. And Lueck has not demonstrated that he has an interest in obtaining quo warranto relief sufficient to except him from NRS Chapter 35's provisions. *See, e.g.*, *State v. City of Sarasota*, 109 So. 473, 478 (Fla. 1926); *Toncray v. Budge*, 95 P. 26, 32-33 (Idaho 1908); *People v. Tighe*, 135 N.E.2d 811 (Ill. App. Ct. 1956); *State v. Winneshiek Co-Op. Burial Ass'n*, 15 N.W.2d 367, 371-72 (Iowa 1944) (Bliss, J., dissenting) (relying in part on the Statute of Anne, 9 Ann., c. 20 (1710) (Eng.)); *King v. Kahne*, 87 S.W. 807 (Ky. 1905); *State ex rel. Wasson v. Taylor*, 38 N.E. 24 (Ohio 1893); *Bolus v. Murphy*, 823 A.2d 1075, 1079 (Pa. Commw. Ct. 2003); *State v. Ryan*, 125 P. 666 (Utah 1912). Accordingly, Lueck's motion must be denied.

*Section 20(2)'s meaning*

■■■■■■

Although Lueck lacks standing to raise it, the issue of Judge Teuton's continuing service in office still deserves our attention. That

issue, which we directed Judge Teuton, Governor Gibbons, and the Family Law Section to address, concerns the meaning of the term "next general election," as it is used in the Nevada Constitution Article 6, Section 20(2). That is, does that term necessarily refer to the general election closest after the appointment, or does it mean, as Governor Gibbons, Judge Teuton, and the Family Law Section assert, the first general election at which the vacancy may be filled in strict compliance with Nevada election procedures?

In answering that question, we first note principles that guide this court's constitutional language analysis. We then apply those rules to ascertain Section 20(2)'s meaning, specifically analyzing the history of the term "next general election" in the constitution and caselaw. Finally, after discerning the meaning of "next general election" in light of that analysis, we apply that meaning to the facts of this case.

*The term "next general election" in Section 20(2) is ambiguous*

As noted, the provision at issue here, Nevada Constitution Article 6, Section 20(2), provides that "[t]he term of office of any justice or judge [appointed by the Governor to fill a Supreme Court or district judge vacancy] expires on the first Monday of January following the next general election." To determine Section 20(2)'s meaning, we turn first to its language. In so doing, we give Section 20(2)'s language its plain meaning, unless the language is ambiguous. *Secretary of State v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1119-20 (2008). If Section 20(2)'s language is ambiguous, meaning that it is susceptible to " 'two or more reasonable but inconsistent interpretations,' " *id.* at 590, 188 P.3d at 1120 (quoting *Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998)), we may look to Section 20(2)'s history, public policy, and reason to determine what those who enacted it intended. *See id.*; *Nevada Mining Ass'n v. Erdoes*, 117 Nev. 531, 538, 26 P.3d 753, 757 (2001). Whatever meaning ultimately is attributed to Section 20(2) may not violate the spirit of that provision. *Burk*, 124 Nev. at 590-91, 188 P.3d at 1120.

Section 20(2)'s "next general election" language can be read as referring to either the general election closest in time after the appointment, regardless of the election's proximity to the appointment, or the next general election at which Nevada's election deadlines can be fully carried out, meaning that the appointment could actually extend beyond the general election immediately following the appointment, as the Governor, Judge Teuton, and the Family Law Section suggest. Since both interpretations are reasonable but inconsistent, Section 20(2)'s "next general election" language is ambiguous. Accordingly, we turn next to that provision's history to de-

termine what those who enacted it intended. *See id.* at 590, 188 P.3d at 1120; *Nevada Mining Ass'n*, 117 Nev. at 538, 26 P.3d at 757.

*Section 20(2)'s "next general election" language was intended to preserve Nevada's long-standing policy to fill judicial vacancies at the next ensuing general election*

*Originally, "next general election" was intended to safeguard Nevadans' right to elect state offices*

Section 20(2)'s "next general election" language originated at the debates and proceedings of Nevada's 1864 constitutional convention. *See Debates & Proceedings of the Nevada State Constitutional Convention of 1864*, at 702 (Andrew J. Marsh off. rep., 1866). At that time, the Constitution's drafters considered adding to the article governing the executive department the following provision for filling vacancies:

When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the next election and qualification of the person entitled to such office.

*Id.* After that language was presented, one of the delegates questioned whether the provision's language allowed the Governor to appoint an individual to fill a judicial vacancy for the remainder of the office's term, although the intent was to expire the appointment's term at the closest election. *Id.* at 702-03.

The delegate posed a situation in which a vacancy arose in a supreme court justice office three or four years before the office's term expired, and stated the following: "It is not intended, I apprehend, that the Governor shall, in such a case, fill [the office] for the rest of the term; and yet I do not see why he may not do it under that section," to which another participant responded, "It says the commission shall expire at the general election and qualification of the person elected." *Id.* at 702. The delegate replied:

Then the office would have to be filled by election, and I do not see but the man elected would hold the office for the next six years. In that manner the whole system might become deranged. The vacancy should only be supplied, by appointment, until the election, and then a judge should be elected merely for the unexpired term of the incumbent who has vacated the office.

*Id.* at 702-03.

Then, the delegate proposed language to ensure that appointments to fill vacancies in judicial offices lasted only until the most

immediate general election following the appointment. *Id.* at 703. The delegate's proposed language provided this:

> In case the office of any Justice of the Supreme Court, or District Judge, shall become vacant before the expiration of the regular term for which he was elected, the vacancy may be filled by appointment by the Governor, *until it shall be supplied at the next general election, when it shall be filled by election, for the residue of the unexpired term.*

*Id.* (Emphasis added.) The debate surrounding the delegate's proposed provision makes clear that the suggested language was intended to preserve the people's constitutional right to elect their own officers, *see* Nev. Const. art. 6, § 5; *State v. Arrington*, 18 Nev. 412, 417, 4 P. 735, 739 (1884) (recognizing that "the framers of the constitution intended to [carefully] guard what, in free governments, has always been considered an inestimable privilege—the right of the people to select their own officers"), by precluding the Governor from appointing an individual to fill a judicial vacancy beyond the time when Nevadans could themselves fill the vacancy by election. *Debates & Proceedings of the Nevada State Constitutional Convention of 1864*, at 702-03.

The delegates of the 1864 constitutional convention clearly favored the proposed provision, as they not only agreed to include it in the constitution, but also determined it should be considered for application to all state officers. *Id.* Because the addition of all state officers broadened its application, rather than placing the provision within the article pertaining to the executive or judicial department, the delegates included the provision among other miscellaneous provisions of a different article. *Id.* More specifically, the provision was set forth under Article 17, Section 22.

### *Decisional law initially focused on the context of "next general election" language*

Since Article 17, Section 22's enactment, the meaning of "next general election" in that provision and others have been interpreted several times by this court. For example, in 1924, in a case concerning vacancies in county clerk and treasurer offices, *Ex Rel. Bridges v. Jepsen*, 48 Nev. 64, 70, 227 P. 588, 590 (1924) (citing *State of Nevada v. Collins*, 2 Nev. 351 (1866)), this court determined that "next general election" in a statute pertaining to vacancies in certain county offices referred to the general election when the office at issue normally would be filled. One year later, in *Ex. Rel. Penrose v. Greathouse*, 48 Nev. 419, 422, 233 P. 527, 528 (1925), however, this court noted that "next general election," as it is used in Article 17, Section 22, meant that an office vacancy should be filled "by election as soon practicable after the vacancy occurs,"

without consideration of when the office normally would be filled by election.

This court clarified the distinction between *Bridges* and *Penrose* in a 1940 case, *Grant and McNamee v. Payne*, 60 Nev. 250, 256, 107 P.2d 307, 310 (1940). Specifically, this court pointed out that Article 17, Section 22, addressed in *Penrose*, "declares what is meant by general election, by stating that at the next general election the vacancy shall be filled by election for the residue of the unexpired term." *Id.* at 255, 107 P.2d 309. But, the court noted, in the provision in *Bridges*, "[n]o such declared intention appears[, t]he term general election stands alone" and thus refers to "an election for the purpose of selecting officers who are by law authorized to be elected at that time." *Id.*

> *Decisional law ultimately reaffirmed that the intent behind "next general election" is the interpretative foundation for the phrase*

Then, in *Brown v. Georgetta*, 70 Nev. 500, 275 P.2d 376 (1954), this court, noting *Grant and McNamee*'s analysis, emphasized that the intent behind utilizing "next general election" language, not solely the language itself, stands as the interpretive foundation. Specifically, *Brown* concerned a vacancy in the office of United States Senator, which the governor filled by appointment pursuant to a statute that provided for an appointee to serve " 'until the next general election, and until his successor shall be elected and qualified.' " *Id.* at 501-02, 275 P.2d at 376-77 (quoting 1929 NCL § 2593). At issue in *Brown*, then, was whether "until the next general election" caused the governor's appointee's term to extend to "the entire unexpired term of office or . . . only until the ensuing biennial election." *Id.* at 501, 275 P.2d at 376-77.

While noting that similar language, without more, previously had been interpreted as meaning the next general election at which the office would normally be filled, the court recognized that in all of the prior cases, the language itself was not so much at issue as intent. *Id.* at 503-04, 275 P.2d at 377-78. With intent in mind, the court analyzed the United States Constitutional provision pursuant to which Nevada's statute for filling such vacancies was enacted. *Id.* at 503-04, 275 P.2d at 377. In particular, the United States Constitution provided that " 'the legislature of any State, may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.' " *Id.* at 504, 275 P.2d at 378 (quoting U.S. Const. amend. XVII). This court determined that the clear intent of that language was that vacancies in United States Senate offices "shall be filled by election of the people . . . subject only to temporary executive appointment." *Id.* at 505, 275 P.2d at 378. Further, the court noted, because

Nevada's statute "must have been enacted with such policy in mind," that statute, including its "next general election" language, must be read with the same intent. *Id.* Thus, the term "next general election," the court concluded, "must be construed to mean the ensuing biennial election." *Id.* at 506, 275 P.2d at 379. Thus, in that case, this court ordered the election for a new senator to proceed, even though, by that point, absentee ballots omitting the office already had been issued. *Id.* at 506-07, 275 P.2d at 379.

After this court's analyses of "next general election" language, Article 17, Section 22, was amended in 1976, when Nevada adopted Article 6, Section 20's judicial selection process for filling vacancies that arise in judicial offices. Hearing on A.J.R. 14 Before the Senate Judiciary Comm., 57th Leg. (Nev., April 14, 1973). Specifically, in creating provisions for a judicial selection process, the drafters removed judicial officers from the provisions of Article 17, Section 22, instead addressing judicial vacancies within the context of the judicial selection process, in Article 6, Section 20(2). *Id.* In so doing, Section 20(2)'s drafters preserved some of the key language that the delegates had added at the constitutional debates and proceedings to ensure that the Governor could not fill a vacancy beyond the closest election following the appointment. *Id.* Indeed, although an early draft of the judicial selection process provisions provided that the individual appointed would serve the remainder of the unexpired term, that provision was amended to ensure that the individual appointed through the judicial selection process would not serve beyond the "next general election." *Id.*

In light of the constitutional framers' original intent to safeguard the people's election prerogative, preserved by the most recent amendments, Section 20(2) must be read so as to effectuate the election policy of this state—gubernatorial appointments of judges last only until the January after the "next general election," meaning the general election most immediately following the appointment.[1] Under that provision, the appointment of a constitutional judicial officer can last no longer than the first Monday in January following the first general election to take place after the appointment.[2]

---

[1] In the 2002 general election, Nevada voters rejected a proposal to amend Section 20(2) so that an appointed judge's term expired after the first general election held at least 12 months after the appointment, when a judge had to be elected to serve the remainder of the term. NRS 47.130(2).

[2] The Governor, Judge Teuton, and the Family Law Section point to NRS 3.080, which provides that an appointed judge's term of office does not expire until after "the next general election . . . at which . . . a district judge shall be chosen for the balance of the unexpired term." Because "next general election" in NRS 3.080 refers to an election at which a successor is elected, they assert, "next general election" in Section 20(2) likewise refers to such an election, and because no successor has been elected here, Judge Teuton's commission remains valid.

*Under Section 20(2), Judge Teuton's term expired in January 2009*

As noted, the first Monday in January following the November 2008 general election was January 5, 2009. Accordingly, Judge Teuton's term ended on January 5, 2009. Even though the statutory deadline for altering the general election ballot was not until August 19, 2008, NRS 293.165(4), after the office became vacant, no candidate's name appeared on the general election ballot. As no individual was elected to fill the office in 2008, the office became vacant as of January 5, 2009, when Judge Teuton's term expired.[3]

## CONCLUSION

First, in the absence of the attorney general's participation and leave of court, NRS Chapter 35 does not authorize an individual with only a general interest in the outcome, such as Lueck, to pursue quo warranto proceedings on behalf of the state to remove a person from public office. Therefore, because the attorney general declined to pursue such an action on Lueck's request and he has no special interest in obtaining quo warranto relief sufficient to justify excepting him from NRS Chapter 35's provisions, we deny Lueck's motion for leave to institute quo warranto proceedings. The clerk of this court shall return, unfiled, Lueck's proposed petition for a writ of quo warranto.

Second, under Nevada Constitution Article 6, Section 20(2), an individual appointed to fill a vacancy in a district court judge office serves until "the first Monday of January following the next general election." According to the history of that provision, the term "next general election" means the general election that most immediately follows the appointment. Such a construction supports Nevada's long-standing policy in favor of filling vacancies in judicial office through election, subject only to the Governor's power to temporarily appoint an individual to fill a vacancy until the next ensuing general election.

---

But to the extent that the provisions conflict, Section 20(2) supersedes NRS 3.080. *Wren v. Dixon*, 40 Nev. 170, 187, 161 P. 722, 726 (1916) (recognizing that "[s]tatutes may be nullified, in so far as their future operation is concerned, by a [C]onstitution as well as by statute"). Moreover, the failure to elect a successor cannot serve to extend Judge Teuton's temporary appointment, which under Section 20(2) *must* end on January 5, 2009. *See generally Hawkins v. Cook*, 40 A. 781, 782 (N.J. 1898) (providing that when an individual is appointed to fill a vacancy until the next annual election, the fact "[t]hat no successor was legally appointed to succeed him did not operate to continue him in office"), *disapproved on other grounds by Haack v. Ranieri*, 200 A.2d 522, 525 (N.J. Super. Ct. Law Div. 1964).

[3]Although Judge Teuton did not validly serve after January 5, 2009, his official acts between that time and the writ's issuance remain valid, under de facto officer principles. *See Walcott v. Wells*, 21 Nev. 47, 57-58, 24 P. 367, 370-71 (1890).

Under Section 20(2), then, Judge Teuton's appointment expired on January 5, 2009—the first Monday of January after the 2008 general election. Accordingly, Judge Teuton's commission and service in office after that date is invalid. In light of this court's duty to administrate Nevada's judicial system and ensure the integrity of the judicial process, we conclude that a writ of mandamus directing the Governor to declare Judge Teuton's office vacant under NRS 3.080(1) is warranted. We thus direct the clerk of this court to issue a writ of mandamus to Governor Jim Gibbons directing him to declare Judge Robert W. Teuton's office vacant.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, SAITTA, and PICKERING, JJ., concur.

GIBBONS, J., concurring in part and dissenting in part:

I concur with the majority that movant Robert W. Lueck lacks standing to pursue quo warranto in this matter. Likewise, I agree that the constitutional appointment-term issue raised by Lueck nonetheless warrants this court's immediate attention. From the majority's analysis thereof, however, I must dissent.

In reaching its conclusion that Article 6, Section 20(2) of the Nevada Constitution mandates the expiration of an appointed judge's term after the general election most immediately following the appointment, the majority accurately describes the history of that ambiguous provision. But nowhere in that extensive history championing the people's right to select constitutional officers exists any indication that the provision should be construed outside the context of this state's election laws, so as to result not in the installation of a newly elected judge, but rather in another potentially months-long judicial selection and appointment process. The provision must be read reasonably. *See Secretary of State v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1120 (2008); *State v. Wells*, 8 Nev. 105, 109 (1872).

As the majority points out, historically, Nevada has adhered to a strong policy of electing its judges and other constitutional officers. *See* Nev. Const. art. 6, § 5; *State v. Arrington*, 18 Nev. 412, 417, 4 P. 735, 739 (1884). In that regard, the constitution has always called for vacancies to be filled by election as soon as practicable, while appointments, solely temporary in nature, ensure the smooth running of government until such election can be had. *Ex. Rel. Penrose v. Greathouse*, 48 Nev. 419, 422, 233 P. 527, 528 (1925). To further that goal, in carrying out its constitutional duty to accommodate elections, *see* Nev. Const. art. 4, § 27; NRS 293.127(1)(c), the Legislature has provided for the nomination and election of candidates for an office declared vacant after the normal filing deadlines have passed. *See* NRS 293.165; *Penrose*, 48 Nev. at 423, 233 P. at

529. For instance, nonpartisan candidates, such as those for district judge office, must file a nominating petition by the fourth Tuesday in June. NRS 293.165(2). And in each of the cases discussed by the majority, the candidates had complied with the applicable nominating statute. Thus, in the 1925 case, *Ex. Rel. Penrose v. Greathouse*, 48 Nev. at 421-23, 233 P. at 528-29, this court ordered onto the general election ballot the name of a candidate who had complied with statutory laws regarding the election of officers to fill vacancies created midterm, and in the 1954 case, *Brown v. Georgetta*, 70 Nev. 500, 507-08, 275 P.2d 376, 379 (1954), this court decided similarly regarding a midterm vacancy governed by a different, but like, provision. Neither of those cases dealt with the situation here, in which compliance with the election laws was not possible.[1]

The majority decision necessarily ignores that fact, suggesting that the constitutional appointment term limit, as they comprehend it, applied regardless of the result. But the practical consequences of the majority's conclusion means that, when a vacancy occurs after the second Tuesday in June, the office must again be declared vacant, as was done here, or the election deadlines must be viewed as optional. Neither result is acceptable.

*Vacancies are disfavored and election deadlines should not be arbitrarily disturbed*

The "law abhors a vacancy" in public office. *State v. Triplett*, 17 N.E.2d 729, 731 (Ohio 1938); *see also State v. Lutz*, 147 So. 429, 432 (Ala. 1933); *Johnson v. Collins*, 464 P.2d 647, 651 (Ariz. Ct. App. 1970); *State Ex Rel. Warder v. Gainer*, 167 S.E.2d 290, 296 (W. Va. 1969); *cf. Ex. Rel. Penrose v. Greathouse*, 48 Nev. 419, 422, 233 P. 527, 528 (1925) (recognizing Nevada's legislative policy "to fill the vacancy for the office of district judge by election as soon as practicable after the vacancy occurs"); *State v. Wells*, 8 Nev. 105, 109 (1872) (noting that a district attorney appointed to fill a va-

---

[1]Indeed, in *Brown*, 70 Nev. at 507-08, 275 P.2d at 379-80, relied on by the majority here, this court affirmed the importance of complying with election laws when filling late-arising vacancies at the general election:

> Under our statutes providing for late nominations under certain conditions it is inevitable that circumstances will arise whereunder ballots containing the names of late nominees will not reach absent voters living in distant parts of the world. If the names of the nominees are otherwise lawfully placed upon the ballots personally voted at the polls, it could not reasonably be contended that the election for the particular office should be declared void.

> . . . .

> [I]n fixing the time before election in which nominations may be made where a vacancy occurs . . . the legislature must be presumed to have chosen these periods as reasonable ones to accomplish the purposes sought.

cancy properly served "until the qualification of a successor . . . because the presence of such an officer is necessary to the proper conduct of public business"). Thus, courts must strongly presume against any intent to draft a constitutional provision creating a condition in which a public office is left wholly vacant for any length of time. *See Warder*, 167 S.E.2d at 296; *cf. Wells*, 8 Nev. at 109. Mandating a second vacancy, caused by the expiration of an appointed judge's term, does nothing to further the policy of avoiding vacancies, and even if no gap between appointments occurs, valuable resources will have been spent in securing the second appointment. Moreover, calling for a second vacancy does nothing to limit the executive branch's appointment powers, as evidently was the concern held by the drafters; at best, it could merely shift those powers to a new governor.

The alternative consequence, ignoring the statutory election deadlines, is no better. "[A]n election is not an inherent right in the people and cannot be held in the absence of legislation clearly authorizing the same." *Grant and McNamee v. Payne*, 60 Nev. 250, 256, 107 P.2d 307, 310 (1940) (citing *Sawyer v. Haydon*, 1 Nev. 75, 78-79 (1865)); *see also Ex Rel. Bridges v. Jepsen*, 48 Nev. 64, 70, 227 P. 588, 590 (1924) (recognizing that "[a]n election can be held only by virtue of some constitutional provision or legal enactment . . . authorizing that particular election"); *Penrose*, 48 Nev. at 424, 233 P. at 529 (recognizing that an election cannot be held in the absence of regulating laws and urging the Legislature to enact election laws so "as to permit a vacancy in a nonpartisan office occurring shortly prior to a general election to be filled, no matter how or when such vacancy occurs"). Therefore, Nevada election law establishing deadlines for declaring candidacy for vacancies that arise after the deadline for filing a declaration of candidacy, NRS 293.165, is not simply a dispensable inconvenience.[2] As the majority does not take issue with the deadline established therein, it must be presumed reasonable, *see Brown*, *supra* note 1, and thus should not be ignored. To do so is to invite a host of issues for the executive and judicial branches to resolve, likely under exigent circumstances, shortly before an election.

---

[2]The primary election for the office in question was held on August 12, 2008. Judge Teuton was not appointed until August 22, 2008. The general election was November 4, 2008.

NRS 293.165(4) provides, in part, that "[n]o change may be made on the ballot for the general election after 5 p.m. on the first Tuesday after the primary election of the year in which the general election is held." Therefore, the deadline for the general election ballot change was Tuesday, August 19, 2008, at 5 p.m., or three days *before* Judge Teuton was appointed by the Governor. The first primary and general elections for which petitions for candidacy may be filed will not take place until 2010.

*An appointment should end when the vacancy may validly be filled
by election*

To recognize the election mandate is to recognize the inseparable obligation to allow a meaningful opportunity to vote. *See, e.g.*, *State v. Marshall*, 633 P.2d 227, 235 n.24 (Alaska 1981) (recognizing that " '[p]rovisions of statutes governing the conduct of elections which have the purpose of securing a complete and enlightened vote or preventing fraud, where failure to comply is capable of influencing the outcome of the election, are mandatory' " (quoting C. Dallas Sands and Norman J. Singer, 2B *Sutherland Statutory Construction* § 57:21 (4th ed. 1973))); *Meyer v. Putnam*, 526 P.2d 139, 140 (Colo. 1974) (recognizing Colorado's constitutional requirement that its legislature pass laws to secure the purity of elections). Thus, in Nevada, the expiration of an appointed district judge's term of office has never been understood apart from correspondingly filling the office through the general election in compliance with Nevada's election laws. Indeed, until today's decision, in Nevada, the term "next general election" has always referred to the first general election when the vacancy may be filled by valid election.

In fact, NRS 3.080, a statute substantially unchanged from its earliest codifications in 1866, *see* 1866 Nev. Stat., ch. 108, §§ 38 and 48, at 238-39, ties the expiration of appointed judges' terms to simultaneously filling the office through the general election. Like the original Article 17, Section 22 of the Nevada Constitution, that statute provides that an appointed judge's term of office does not expire until after "the next general election . . . at which . . . a district judge shall be chosen for the balance of the unexpired term." The majority dismisses this language as merely inconsistent with and, thus, superseded by, Nevada's Constitution. But principles of constitutional interpretation insist that the " 'contemporaneous construction by the legislature of a constitutional provision is a "safe guide to its proper interpretation" and creates "a strong presumption" that the interpretation was proper.' " *Halverson v. Secretary of State*, 124 Nev. 484, 488-89, 186 P.3d 893, 897 (2008) (quoting *State ex rel. Udall v. Colonial Penn*, 812 P.2d 777, 783 (N.M. 1991)). Thus, as the Legislature drafted the earliest codifications of NRS 3.080 contemporaneous with and pursuant to its understanding of Article 17, Section 22, it is strongly presumed that the term of office of an individual appointed to fill a vacancy does not expire until the office is filled through the next available general election. As the majority points out, that original intent did not change with the 1976 amendments to the constitution, and thus, the intent is carried through to our current constitution.

In like circumstances, the Iowa Supreme Court, in *State v. Claussen*, 250 N.W. 195, 200 (Iowa 1933), concluded that giving

effect to a constitutional election mandate meant filling vacancies in compliance with election laws enacted in pursuance of that mandate. Similar to Nevada law, the clause at issue in *Claussen* provided the following: "[A]ll persons appointed to fill vacancies in office, shall hold until the next general election, and until their successors are elected and qualified." 250 N.W. at 197 (internal quotations omitted). In *Claussen*, the Iowa Supreme Court addressed whether a state office filled by appointment within 30 days of a general election can then be filled at that election, when compliance with Iowa's election laws was impossible. *Id.* After recognizing the importance of election laws in giving effect to constitutional election mandate, the majority determined that "[t]he [term] next general election means the next general election at which, in pursuance of law, a vacancy may legally be filled. . . . [T]his does not necessarily mean the next general election, but the election at which the vacancy can be legally filled." *Id.* at 200 (citing *Ex Rel. Bridges v. Jepsen*, 48 Nev. 64, 227 P. 588 (1924)).

The same analysis is warranted here, as we have recognized. *See, e.g.*, *Bridges*, 48 Nev. at 69, 227 P. at 590 (stating that "election to office be by the people, when it can conveniently be done, and that appointments to fill vacancies made to meet the requirements of public business, shall be effective only until the people may elect"); *Ex. Rel. Penrose v. Greathouse*, 48 Nev. 419, 422, 233 P. 527, 528 (1925) (recognizing the legislative policy "to fill the vacancy for the office of district judge by election as soon as practicable after the vacancy occurs" (citing to former NRS 3.080, which provided that the Governor "shall fill [a vacancy in a district judge office] by granting a commission, which shall expire at the next general election . . . at which election such officers shall be chosen for the balance of the unexpired term")).

Because the majority overlooks the full import of Nevada law regarding vacancies and renders a decision contrary to the election priorities of this state, I respectfully dissent from that portion of the majority's decision concluding that vacancy appointments necessarily terminate after the general election most immediately following the appointment.